STATE OF CONNECTICUT *v.* JUAN R. TORRES
(AC 19820)

O'Connell, C. J., and Zarella and Dupont, Js.[1]

Argued January 12—officially released May 9, 2000

[1] The listing of judges reflects their seniority status on this court as of the date of oral argument.

*Richard Hustad Miller,* special public defender, for the appellant (defendant).

*John A. East III,* assistant state's attorney, with whom, on the brief, were *Mark S. Solak,* state's attorney, and *Vincent J. Dooley,* senior assistant state's attorney, for the appellee (state).

*Opinion*

ZARELLA, J. The defendant, Juan R. Torres, appeals from the judgment of conviction, rendered after a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4) and two counts of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (B). On appeal, the defendant claims that the trial court improperly allowed the state (1) to present evidence of other misconduct and (2) to make the jury aware that his separately tried accomplice was imprisoned. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant was a longtime friend of Julio Santiago and Jose Ortiz. Ortiz was employed at the Big A auto parts store in Windham. Ortiz informed the defendant that Big A was profitable and that at the end of the business day, several thousand dollars in proceeds usually were taken from the registers and placed in the store's safe. Additionally, Ortiz revealed that the safe generally was unlocked during business

hours until fifteen minutes prior to closing, when the day's proceeds were counted and deposited in the safe.

The defendant and Santiago devised a plan to rob the store just prior to closing, when the day's proceeds had been counted and deposited in the safe. As part of that plan, the defendant and Santiago agreed to disguise themselves with ski masks and to rob the store at gunpoint.

On February 14, 1996, Ortiz left work at Big A at approximately 6:15 p.m. and returned home at 6:20 p.m. The defendant telephoned Ortiz to tell him that the robbery was about to occur and that he would call Ortiz after it was completed with instructions on where to meet him and Santiago after the robbery.

The owner of Big A, Glen Gabriele, was working at the store on February 14, 1996. At approximately 6:40 p.m., Gabriele's friend, Doug Hoyle, entered and Gabriele asked him to watch the front of the store while he went to the bathroom. The only other person in the store at that time was Alan Fenrow, a Big A employee.

A man entered the store and announced, "This is a stickup!" The man was thin, approximately five feet, ten inches tall, and was wearing dark clothing, gloves and a black ski mask. Hoyle asked the man if he was serious, and the man thrust a gun at Hoyle's face. A second robber, who was thin and approximately five feet, four inches tall, then entered the store.

The taller robber placed his gun to Hoyle's back and forced him to lie on the floor. The shorter robber stood guard over Hoyle while the taller robber approached Fenrow, who was unaware that a robbery was occurring because he was busy repairing a computer. The taller robber put his gun to Fenrow's back and said, "This is a stickup!" He forced Fenrow to guide him to the safe, which the taller robber then emptied. Fenrow was

forced to the floor, and the robbers warned him and Hoyle to remain on the ground. The robbers then fled.

Gabriele returned from the bathroom and discovered that the store had been robbed. After the police were called, neither Hoyle nor Fenrow could describe the robbers' faces. Both agreed, however, that the taller robber had a semiautomatic handgun. Also, Hoyle informed the police that the shorter robber carried a semiautomatic weapon that was smaller than the one carried by the taller robber.[2]

Sometime after 7 p.m., the defendant, using a cellular telephone, called Ortiz and instructed him to go to a deserted cornfield one to two miles from Big A and wait for Santiago and the defendant to arrive. Ortiz immediately drove to the cornfield to meet the two men. Upon arriving, the defendant and Santiago entered Ortiz's car, and the defendant told Ortiz that he had buried both guns and his mask in the snow in the cornfield. The defendant and Santiago gave Ortiz specific details describing the robbery. Santiago openly displayed the money stolen from Big A, and the two robbers complained to Ortiz that they had only obtained $152 and some rolled coins from the safe. Ortiz drove Santiago to his sister's house and then went with the defendant to a fast-food restaurant. Ortiz drove the defendant back to the cornfield a few days later, and the defendant retrieved the guns and the mask he had buried.

The defendant and Santiago next planned to rob a McDonald's restaurant in Mansfield, and Ortiz agreed to be the driver of the getaway car. On February 23, 1996, nine days after the Big A robbery, Ortiz dropped

---

[2] Both witnesses described the color of the gun used by the taller man as different from the color of the guns entered into evidence from the robbery of a McDonald's restaurant that the defendant, Santiago and Ortiz participated in nine days after the robbery at the Big A store.

the two men off near the McDonald's restaurant and then drove to a nearby spot on a limited access highway beneath the Route 195 overpass to wait for them. At 11:30 p.m., state police Trooper Robert Peasley, who was on duty, spotted the parked car. He approached the car, believing that it was abandoned, and discovered Ortiz lying across the front seat. Ortiz was visibly nervous and gave Peasley evasive responses to his questions. Ortiz claimed that his car had overheated. Peasley was suspicious and radioed for assistance. Three troopers arrived and discovered that the car was in good working condition.

Despite their suspicions about Ortiz, the troopers could not justifiably detain him and allowed Ortiz to drive away. The troopers then received a call on the radio dispatch reporting the robbery of a nearby McDonald's restaurant. The troopers went to the McDonald's and discovered that two masked men had robbed the restaurant at gunpoint and fled on foot. Two of the troopers began tracking the robbers with the assistance of a dog. The dog led the troopers to a spot beneath the highway overpass where they had encountered Ortiz. The dog then led the troopers past the overpass to a large bush. Underneath the bush the troopers found a nine millimeter pistol, a .380 caliber pistol, a black ski mask and several money bags. The robbers were not found.

After his encounter with the troopers, Ortiz went home and received a telephone call from the defendant, asking why Ortiz had not met him at the overpass. Soon thereafter, the police went to Ortiz's home and took him into custody. The police took Ortiz to the McDonald's, where Ortiz discovered that Santiago also was in custody. Ortiz gave the police a statement that implicated the defendant, Santiago and himself in the robbery of the McDonald's. The defendant also confessed to the McDonald's robbery. Two days later, Ortiz was inter-

viewed by two detectives while awaiting arraignment in connection with the McDonald's robbery. Ortiz gave a statement implicating the defendant, Santiago and himself in the Big A robbery. Ortiz testified at the Big A robbery trial for the prosecution.

I

The defendant first claims that the court improperly allowed the state to present evidence concerning the McDonald's robbery during his trial in connection with the Big A robbery. We disagree.

The following additional facts are necessary for the resolution of this issue. During the defendant's trial, the state submitted a motion to admit evidence about the McDonald's robbery. The state sought to introduce the evidence for the limited purpose of establishing a course of conduct and the defendant's identity. The grounds for the state's motion were the signature crime and identity exceptions to the general rule prohibiting the admission of other misconduct evidence.

After a hearing outside the presence of the jury, the court agreed that the evidence of the McDonald's robbery was admissible, but disagreed that it was admissible under either the signature crime or identity exceptions. Instead, the court concluded that the evidence of the McDonald's robbery was admissible to prove an element of the crime of robbery in the first degree. The court stated that the McDonald's evidence was admissible for the limited purpose of establishing the identity of the two handguns and the ski mask. The court determined that the probative value of the evidence outweighed its prejudicial effect. The court also ruled that the defendant's confession to the McDonald's robbery was admissible, but that the evidence of his conviction for that crime was inadmissible.

Before the jury heard any evidence pertaining to the McDonald's robbery, the court gave the jury a caution-

ary instruction.[3] The state then presented the testimony of several witnesses, including Ortiz, regarding the planning, execution and aftermath of the McDonald's robbery. The state also offered into evidence the two guns used in the McDonald's robbery, the ski mask and the defendant's confession.

Defense counsel objected to the admission of the testimony concerning the McDonald's robbery. In overruling the defendant's objection, the court gave the jury an additional cautionary instruction.[4] A final cautionary instruction also was given during the court's charge to the jury.[5]

---

[3] The court instructed the jury as follows: "Before the questioning begins—this witness and there will be other witnesses that are going to be testifying relative to another robbery. A robbery of a McDonald's in Mansfield. The purpose of this is not to show that the defendant is an evil person or [that he] has an evil penchant or that because he had been involved in one robbery he must have been involved in the robbery here.

"The purpose of this is for a limited reason. This is to show how certain items were retrieved, which have a bearing on the case in question, [and it] can only be used for that purpose. To show that certain items that the state is going to be offering—where they came from, how they were handled, why they were retrieved and what their connection is with this case.

"So, I want to caution you that you will not be able to use . . . the allegations that [the defendant] was involved in another robbery to determine his guilt or innocence in this robbery as a person of a criminal mind. We're only doing it to determine how certain items may have been recovered and [to] use it for that purpose."

[4] The court instructed the jury as follows: "Again, this testimony concerning the McDonald's incident is not to show that [the defendant] is the kind of person that repeatedly commits crimes, that just because you might have committed one crime you must have committed others. But it's to—[its] limited purpose is to show how these items were recovered, and the state is trying to show that these items were the same items that were used in the Big A robbery. And [the testimony is] for that purpose only."

[5] The court gave the jury the following instructions: "Now, whenever evidence was admitted for a limited purpose, you must not consider it for any other purpose. And I called your attention to these matters when the evidence was admitted. And I just remind you of one instance that there was evidence offered by the state—a whole sequence of evidence offered by the state—of other acts of misconduct of [the defendant] regarding the robbery of the McDonald's restaurant in Mansfield. And again, that evidence was not admitted to prove the bad character of [the defendant] or his

"As a general rule, evidence of prior misconduct is inadmissible to prove that a criminal defendant is guilty of the crime of which the defendant is accused. . . . Such evidence cannot be used to suggest that the defendant has a bad character or a propensity for criminal behavior." (Citations omitted.) *State* v. *Kulmac*, 230 Conn. 43, 60, 644 A.2d 887 (1994). Exceptions to the general rule exist, however, "if the purpose for which the evidence is offered is to prove intent, identity, malice, motive, a system of criminal activity or the elements of a crime." (Internal quotation marks omitted.) *State* v. *Adorno*, 45 Conn. App. 187, 191–92, 695 A.2d 6, cert. denied, 242 Conn. 904, 697 A.2d 688 (1997); see *State* v. *Figueroa*, 235 Conn. 145, 162, 665 A.2d 63 (1995). "We have developed a two part test to determine the admissibility of such evidence. First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. . . . Second, the probative value of the evidence must outweigh its prejudicial effect." (Internal quotation marks omitted.)

tendency to commit criminal acts. Such evidence was admitted solely to show or establish the defendant's knowledge or possession or the means to commit the Big A robbery—that is, the weapons and ski mask, [state's exhibits] B, C and D—for the commission of the crime that's charged here—the Big A robbery and kidnapping at the auto parts store. And to corroborate crucial prosecution testimony with regard to those items and Mr. Ortiz. You may not consider such evidence as establishing a predisposition on the part of the defendant to commit any of the crimes charged or to demonstrate a criminal propensity. You may consider such evidence if you believe it and further find that it logically, rationally and conclusively supports the issues for which it is being offered by the state. But only as it may bear here on the issues of the identity and recovery of the weapons and the ski mask allegedly used by the defendant and his accomplice in the Big A robbery, by means of the McDonald's robbery.

"On the other hand, if you do not believe such evidence or even if you do not find that it logically, rationally and conclusively supports the issue for which it's being offered by the state, then you may not consider that testimony for any purpose. For this reason you may consider this evidence only on the issues of identity and recovery and use of the pistols and the ski mask—and to corroborate Mr. Ortiz' version with regard to those weapons and the ski mask, and for no other purpose."

*State* v. *Kulmac*, supra, 61; see *State* v. *Figueroa*, supra, 162.

"The primary responsibility for making these determinations rests with the trial court. We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." *State* v. *Kulmac*, supra, 230 Conn. 61; see *State* v. *Figueroa*, supra, 235 Conn. 162; *State* v. *Mooney*, 218 Conn. 85, 127, 588 A.2d 145, cert. denied, 502 U.S. 919, 112 S. Ct. 330, 116 L. Ed. 2d 270 (1991).

Under the first prong of our analysis, our examination of the proffered evidence reveals that the court properly admitted the evidence of the McDonald's robbery because the evidence was relevant to prove an element of the crime charged in connection with the Big A robbery. An essential element of robbery in the first degree, pursuant to § 53a-134 (a) (4), is that the accused "displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . ." The evidence concerning the McDonald's robbery was, therefore, relevant to show ownership of the guns and mask used in the robberies.

To show this, the court allowed testimony tracing the possession of the guns used in the McDonald's robbery to the defendant through testimony of the state troopers involved in investigating the robbery, as well as through the testimony of Ortiz and through the defendant's own confession to the McDonald's robbery. The court also allowed testimony that established that the guns used by the defendant in the McDonald's robbery were the same as those used in the Big A robbery. We conclude, therefore, under the first prong of our analysis that the evidence concerning the McDonald's

robbery was relevant to an element of the Big A robbery.[6]

Having determined that the court properly found the challenged evidence to be relevant, we must next review whether the court abused its discretion in weighing the probative value of the evidence against its prejudicial effect. See *State* v. *Figueroa*, supra, 235 Conn. 166. "Relevant evidence of prior uncharged misconduct that is prejudicial in nature is admissible if

[6] Furthermore, we conclude that the proffered evidence was relevant to prove a common scheme of criminal activity. In *State* v. *Mandrell*, 199 Conn. 146, 152, 506 A.2d 100 (1986), our Supreme Court held that even though two robberies occurred five years apart, the methods used in the robberies were sufficiently similar and unique to warrant a reasonable inference that the defendant committed both crimes. The similar methods in *Mandrell* included the fact that both robberies took place in liquor stores close to one another on the same street in Hartford, both were committed by two black males, the robber used profanity in both robberies and exhibited aggressive, violent behavior, the store clerk in both was forced to lie down on the floor in the back room and was struck in the head with a liquor bottle. Id. Similarly, in *State* v. *Braman*, 191 Conn. 670, 678–81, 469 A.2d 760 (1983), our Supreme Court held that the trial court justifiably decided that the common features of two robberies supported the reasonable belief that the same person or persons committed both robberies. The common features in *Braman* included the fact that both robberies occurred at bars in adjoining towns, two people participated in each robbery and used a shotgun with a cut-down configuration and a small automatic pistol, in both instances the robber with the shotgun took the leadership role, the people inside the two bars were ordered into the back rooms and the robberies occurred close in time. Id., 678.

In the present case, there were many common features to the McDonald's and Big A robberies, including the fact that both occurred at night in nearby towns, both occurred within a ten day time frame, both were committed by two men, one tall and one short, the robbers wore dark clothing and face masks, in both robberies the taller robber was armed with a large caliber semiautomatic handgun and the shorter robber had a smaller caliber semiautomatic handgun, the taller robber in both instances was the leader and forced an employee to show him to the safe, the robbers ignored the cash registers in both robberies and focused solely on the money in the safes, and the robbers in both instances fled on foot and planned to meet a third party. These similarities in the methods used in the two crimes are sufficient to warrant the admission of the proffered evidence to show a common scheme.

the trial court, in the exercise of its sound discretion, determines that its probative value, for one or more of the purposes for which it is admissible, outweighs its prejudicial impact on the accused." (Internal quotation marks omitted.) *State* v. *Ortiz*, 40 Conn. App. 374, 380, 671 A.2d 389, cert. denied, 236 Conn. 916, 673 A.2d 1144 (1996).

"Because of the difficulties inherent in [the probative-prejudicial] balancing process, the trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done." *State* v. *Howard*, 187 Conn. 681, 685, 447 A.2d 1167 (1982). The court, however, was aware of the potential prejudicial effect of the evidence and carefully instructed the jury three times concerning the limited use for which the evidence was being admitted.[7] See *State* v. *Figueroa*, supra, 235 Conn. 167. On three separate occasions, the court took specific steps to instruct the jury that the evidence of the McDonald's robbery could not be used to suggest that the defendant had a bad character or a propensity for criminal behavior. Furthermore, the court specifically instructed the jury that the evidence was to be used for the limited purpose of establishing the defendant's knowledge or possession of the means to commit the Big A robbery.

Under these circumstances, we conclude that the court did not abuse its discretion in determining that the probative value of the evidence exceeded its prejudicial effect. Accordingly, we conclude that there was no abuse of discretion in the court's decision to admit evidence concerning the McDonald's robbery.

II

The defendant next claims that the court improperly allowed the state to make the jury aware that his sepa-

---

[7] See footnotes 3 through 5.

rately tried accomplice, Santiago, had been imprisoned. The defendant argues that verbal references concerning Santiago's incarceration and his appearance at trial in prison garb were the equivalent of the defendant himself appearing at trial in prison garb and, therefore, the defendant's constitutional right to a fair trial was violated.[8] We will address the issue of the prison garb and the verbal references separately.

The defendant acknowledges that he failed to preserve his claim of a constitutional deprivation arising out of Santiago's appearance and requests review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[9] If the defendant fails to meet any one of the four prongs of *Golding*, his claim will fail. Id., 240. The first two prongs of *Golding* address the reviewability of the claim, and the last two involve the merits of the claim. *State* v. *Beltran*, 246 Conn. 268, 275, 717 A.2d 168 (1998); *State* v. *Askew*, 55 Conn. App. 34, 38, 739 A.2d 274, cert. denied, 251 Conn. 918, 740 A.2d 866 (1999).

We conclude that the defendant has not satisfied the first prong of *Golding* and, therefore, we decline to review his claim. A defendant may not be compelled to appear in court wearing the distinctive attire of a prisoner. *State* v. *Williamson*, 206 Conn. 685, 704, 539 A.2d 561 (1988). Further, an incarcerated witness can-

[8] At trial, the prosecution produced Santiago for the purpose of conducting a height comparison between Santiago and the defendant. Santiago did not testify.

[9] In *State* v. *Golding*, supra, 213 Conn. 239–40, our Supreme Court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis in original.)

not be required to appear in court during the course of a trial in the distinctive attire of a prisoner. Practice Book § 44-7. An adequate record of this issue on appeal, therefore, must include evidence that the witness[10] appeared in court wearing prison clothing.

Because the defendant failed to object to Santiago's appearance in court in prison garb, the court never addressed the issue. No description of Santiago's attire was placed on the record and, consequently, the record is inadequate for consideration of the defendant's unpreserved claim.[11] See *State* v. *Golding*, supra, 213 Conn. 240. "The defendant bears the responsibility for providing a record that is adequate for review of his claim of constitutional error. If the facts revealed by the record are insufficient, unclear or ambiguous as to whether a constitutional violation has occurred, we will not attempt to supplement or reconstruct the record, or to make factual determinations, in order to decide the defendant's claim." Id. We therefore decline to review this unpreserved claim.

The defendant also claims that he was deprived of a fair trial as a result of certain statements made by the prosecutor during the course of comparing Santiago's height with that of the defendant during Ortiz' testimony. The following colloquy and testimony took place:

"[The Prosecutor]: I'd ask that [Santiago] be brought out and the defendant be asked to stand next to him for the purposes of showing the height differential?

---

[10] For purposes of the discussion of this issue, we need not decide if Santiago was a witness within the terms of Practice Book § 44-7 or *Estelle* v. *Williams*, 425 U.S. 501, 512–13, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976).

[11] Furthermore, the defendant filed a motion for rectification and articulation dated December 14, 1998, seeking, inter alia, a factual finding that Santiago appeared at the trial in prison clothing. This motion was denied because the court had no recollection as to Santiago's attire. A subsequent motion for review was filed by the defendant and, although the Supreme Court granted review during a period when the appeal was pending before that court, the relief sought was denied.

"The Court: All right. Mr. Sheriff, if you would remove the chair next to [the defendant]? I think you want them to stand next to each other.

"[The Prosecutor]: Yes.

\* \* \*

"[The Prosecutor]: And that's Mr. Santiago that they just let out of the lockup?

"[Witness]: [Testifying as to the identity of Santiago] Yes.

"[The Prosecutor]: And he's the same individual . . . that was involved in both the Big A—

"[Witness]: Yes.

"[The Prosecutor]:—and the McDonald's robberies?

"[Witness]: Yes."

The defendant acknowledges that he failed to pursue this claim at trial and again seeks *Golding* review. The first two prongs of *Golding* are satisfied, as the record is adequate and the claim is of constitutional magnitude alleging a violation of a fundamental right. See *State* v. *Kenney*, 53 Conn. App. 305, 320, 730 A.2d 119, cert. denied, 249 Conn. 930, 733 A.2d 851 (1999). The third prong of *Golding* requires that the alleged constitutional violation clearly exist and clearly deprived the defendant of a fair trial. *State* v. *Golding*, supra, 213 Conn. 240. In the present case, the prosecutor's verbal references to Santiago's incarceration did not clearly deprive the defendant of a fair trial.

In *State* v. *Tucker*, 226 Conn. 618, 629, 629 A.2d 1067 (1993), our Supreme Court held that the trial court did not abuse its discretion in denying the defendant's motion for a mistrial after inadvertently referring to the defendant as "the prisoner." The court reasoned that the jurors "knew that the defendant had been arrested

and that, at some point, [the defendant] must have been in police custody. . . . It certainly could not have surprised the jury, therefore, to have heard the defendant referred to as 'the prisoner' and, if the reference registered with the jury at all, its meaning would in all likelihood have been ambiguous. Moreover, the court provided both preliminary and final instructions concerning the presumption of innocence that the jury is presumed to have followed. Included in those instructions was an admonition that no inference was to be drawn from the defendant's arrest. . . . We are unpersuaded that this isolated reference to the defendant as 'the prisoner' in the overall context of carefully crafted instructions and overwhelming evidence of guilt infected the trial with unfairness and contributed to the verdict." (Citations omitted.) Id., 628–29.

In the present case, the defendant claims that references about Santiago's incarceration, and not his own, deprived him of a fair trial. Prior to Santiago's appearance in court, however, the jury already had been informed that the defendant, Ortiz and Santiago had been arrested in connection with the McDonald's robbery. Additionally, the jury was aware that Ortiz was incarcerated after having pleaded guilty to the robberies at McDonald's and Big A. Having been made aware that Ortiz, Santiago and the defendant had been arrested in connection with the McDonald's robbery, that Ortiz and the defendant had confessed to the McDonald's robbery and that Ortiz had been incarcerated, the jury could not have been surprised by the minor references to Santiago's incarceration.

Further, the court instructed the jury several times that it was not to presume the defendant's guilt on the basis of testimony concerning the defendant's involvement in the McDonald's robbery.[12] We therefore con-

---

[12] See footnotes 3 through 5.

clude that the isolated and minimal references to Santiago's incarceration, viewed in the overall context of the court's instructions and the trial as a whole, did not clearly deprive the defendant of a fair trial and, therefore, the third prong of *Golding* has not been satisfied.

The judgment is affirmed.

In this opinion the other judges concurred.