STATE OF CONNECTICUT *v.* WILLIAM HOLMES, JR.
(AC 18790)

O'Connell, C. J., and Zarella and Dupont, Js.[1]

Argued February 14—officially released August 22, 2000

*Jeremiah Donovan*, special public defender, for the appellant (defendant).

[1] The listing of judges reflects their seniority status on this court as of the date of oral argument.

*Peter A. McShane*, assistant state's attorney, with whom, on the brief, were *Kevin T. Kane*, state's attorney, and *Stephanie Pillar* and *Patrick Fryer*, certified legal interns, for the appellee (state).

*Opinion*

O'CONNELL, C. J. The defendant, William Holmes, Jr., appeals from the judgment of conviction, rendered after a jury trial, of one count of murder in violation of General Statutes § 53a-54a. The defendant claims that the trial court improperly (1) denied his request to order the state either to grant immunity to a witness or, in the alternative, to counsel the state to dismiss the charge and (2) permitted the state to introduce evidence of a subsequent crime committed by the defendant. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On September 2, 1995, Linda Alexander lived at 30 Chapel Street in New London. On that day, Joseph Thompson was found dead on her bathroom floor, having been killed by a single gunshot wound to the head. The police seized two cigar blunts[2] and a nine millimeter spent shell casing in the bathtub.

That evening, the defendant was involved in the shooting death of Wade Denson in Brooklyn, New York.[3] The following day, September 3, 1995, Brooklyn detectives went to a Brooklyn apartment in an attempt to apprehend the defendant for Denson's murder. As the detectives were attempting to enter the apartment, the defendant and his brother fled out a back window and, after a short chase, were apprehended. While they were being pursued by the detectives, a nine millimeter hand-

---

[2] At trial, a blunt was defined as a hollowed-out cigar with marijuana placed inside of it.

[3] The admission of this evidence is the subject of the second issue on appeal.

gun fell from the defendant's pants. The detectives seized the weapon.

Soon after his arrest, the defendant provided the Brooklyn detectives with two statements. The first statement pertained to the shooting death of Denson in Brooklyn. In that statement, the defendant stated that he, Denson and a third person were smoking a blunt. When the blunt was passed to Denson, he dropped it on the floor. The defendant told Denson that he must pick it up and pass it without taking his turn. Denson refused to comply and took his turn anyway. The defendant then pointed the nine millimeter handgun at him. Although the defendant did not recall firing the gun, he fled the apartment immediately after the incident, and Denson was found dead from a gunshot wound a few hours later.

The second statement concerned the shooting death of Thompson, which had occurred in New London just a few hours before Denson was killed in Brooklyn. In his statement, the defendant mentioned that he remembered pointing his gun at Thompson but did not remember it going off. The jury could have found from the testimony of one of the detectives, that the defendant, Ronald Gadsen and Thompson were smoking a blunt in Alexander's bathroom when Thompson dropped it. Although blunt smoking protocol required that he pass it without taking his turn, Thompson disregarded the custom and took his turn anyway. This angered the defendant and caused him to point the handgun at Thompson. The defendant did not remember firing the gun, but after the incident he and Gadsen immediately left for New York.

The defendant's version of the events is that the shooting was completely accidental. He claims that he wanted to show his friends his gun and as he pulled it out of his pants to show it to them, it discharged, killing

Thompson. Not knowing what to do, he and Gadsen ran out of the house and made their way to New York.

I

The defendant first claims that the state should have granted immunity to Gadsen or, in the alternative, dismissed the pending murder charge. We disagree.

The defendant informed the court that he expected that Gadsen would refuse to answer questions regarding the incident and that any invocation of Gadsen's fifth amendment privilege against self-incrimination should be invalid. The defendant contended that if the court allowed Gadsen to invoke his fifth amendment privilege, the state should either offer immunity to secure Gadsen's testimony or, in the alternative, dismiss the case against the defendant. The defendant claimed that if Gadsen's testimony were introduced, it would confirm his description of the shooting as accidental. The trial court allowed Gadsen to invoke his fifth amendment privilege.

There is no authority for an order compelling the state to grant immunity to a defense witness or, in the alternative, to have the charge against the defendant dismissed. The defendant concedes that in Connecticut and many other jurisdictions, the prosecution is under no duty to grant immunity to a defense witness if the prosecutor does not want to do so. *State* v. *McIver*, 201 Conn. 559, 566–68, 518 A.2d 1368 (1986); *State* v. *McLucas*, 172 Conn. 542, 561, 375 A.2d 1014, cert. denied, 434 U.S. 855, 98 S. Ct. 174, 54 L. Ed. 2d 126 (1977); *State* v. *Simms*, 170 Conn. 206, 210–11, 365 A.2d 821, cert. denied, 425 U.S. 954, 96 S. Ct. 1732, 48 L. Ed. 2d 199 (1976); see also *United States* v. *Turkish*, 623 F.2d 769, 777 (2d Cir. 1980), cert. denied, 449 U.S. 1077, 101 S. Ct. 856, 66 L. Ed. 2d 800 (1981).

The defendant in effect seeks to overrule established Supreme Court precedent. This can not be done. "It is

not within our function as an intermediate appellate court to overrule Supreme Court authority." *State* v. *Fuller*, 56 Conn. App. 592, 609, 744 A.2d 931, cert. denied, 252 Conn. 949, 748 A.2d 298 (2000). Accordingly, the trial court properly refused to order the state to grant the witness immunity or to dismiss the case.

## II

The defendant next claims that the trial court improperly admitted evidence that the defendant committed a subsequent homicide. We disagree.

At trial, the state offered evidence concerning Denson's death, and the court admitted it over the defendant's objection.[4] "As a general rule, evidence of [other] misconduct is inadmissible to prove that a criminal defendant is guilty of the crime of which the defendant is accused. . . . Such evidence cannot be used to suggest that the defendant has a bad character or a propensity for criminal behavior. . . . Exceptions to the general rule exist, however, if the purpose for which the evidence is offered is to prove intent, identity, malice, motive, a system of criminal activity or the elements of a crime. We have developed a two part test to determine the admissibility of such evidence. First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. . . . Second, the probative value of the evidence must outweigh its prejudicial effect. . . .

"The primary responsibility for making these determinations rests with the trial court. We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *Torres*, 57 Conn. App. 614, 621–22, 749 A.2d 1210, cert. denied, 253 Conn. 927, 754 A.2d 799 (2000).

---

[4] The court, however, did provide the jury with a cautionary instruction.

Under the first prong of our analysis, our examination of the evidence reveals that the court properly admitted the evidence of Denson's murder because the evidence could be considered relevant on the issue of intent. "Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is irrelevant or too remote if there is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter. . . . Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative." (Internal quotation marks omitted.) *State* v. *DeCaro*, 252 Conn. 229, 257, 745 A.2d 800 (2000).

It was reasonable for the court to accept the evidence presented by the state concerning the defendant's blunt smoking protocol and his role in Denson's shooting. That evidence showed that both Denson and Thompson were killed under similar circumstances, that is, the defendant shot them for violating his blunt smoking rules. The defendant claimed that the shooting was accidental. Under these circumstances, the evidence that the defendant shot Denson for violating smoking protocol was relevant to the defendant's intent in shooting Thompson. That evidence demonstrated that the defendant had shot Thompson intentionally and it was not accidental.

"Having determined that the court properly found the challenged evidence to be relevant, we must next review whether the court abused its discretion in weighing the probative value of the evidence against

its prejudicial effect. . . . Relevant evidence of . . . uncharged misconduct that is prejudicial in nature is admissible if the trial court, in the exercise of its sound discretion, determines that its probative value, for one or more of the purposes for which it is admissible, outweighs its prejudicial impact on the accused. . . . Because of the difficulties inherent in [the probative-prejudicial] balancing process, the trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done." (Citations omitted; internal quotation marks omitted.) *State* v. *Torres*, supra, 57 Conn. App. 623–24. The court was aware of the potentially prejudicial effect of the evidence and carefully instructed the jury that the evidence was offered and might be considered by it for the sole purpose of deciding the intent of the defendant. Clearly, the fact that the defendant engaged in similar misconduct in Brooklyn only hours after the New London murder, is highly probative on the issue of his intent to commit a criminal act. The trial court, therefore, did not abuse its discretion when it admitted the evidence regarding the Denson murder.

The judgment is affirmed.

In this opinion the other judges concurred.