# STATE OF CONNECTICUT *v.* WILLIAM HOLMES, JR.
## (SC 16410)

Sullivan, C. J., and Borden, Norcott, Katz and Vertefeuille, Js.

Argued April 25—officially released July 31, 2001

*Jeremiah Donovan*, for the appellant (defendant).

*Peter A. McShane*, senior assistant state's attorney, with whom, on the brief, was *Kevin T. Kane*, state's attorney, for the appellee (state).

*Opinion*

VERTEFEUILLE, J. Pursuant to our grant of certification, the defendant, William Holmes, Jr., appeals from the judgment of the Appellate Court affirming the trial court's judgment of conviction for murder in violation of General Statutes § 53a-54a.[1] He claims that the trial court violated his state and federal constitutional rights to due process and compulsory process by refusing to require the state either to grant immunity from prosecution to a certain defense witness or, alternatively, to suffer dismissal of the case. We disagree and, accordingly, affirm the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following relevant facts that the jury reasonably could have found. "On September 2, 1995, Linda Alexander lived at 30 Chapel Street in New London. On that day, Joseph Thompson was found dead on her bathroom floor, having been killed by a single gunshot wound to the head. The police seized two cigar blunts[2] and a nine millimeter spent shell casing in the bathtub.

"That evening, the defendant was involved in the shooting death of Wade Denson in Brooklyn, New York.

---

[1] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

[2] "At trial, a blunt was defined as a hollowed-out cigar with marijuana placed inside of it." *State* v. *Holmes*, 59 Conn. App. 484, 485 n.2, 757 A.2d 639 (2000).

The following day, September 3, 1995, Brooklyn detectives went to a Brooklyn apartment in an attempt to apprehend the defendant for Denson's murder. As the detectives were attempting to enter the apartment, the defendant and his brother fled out a back window and, after a short chase, were apprehended. While they were being pursued by the detectives, a nine millimeter handgun fell from the defendant's pants. The detectives seized the weapon.

"Soon after his arrest, the defendant provided the Brooklyn detectives with two statements. The first statement pertained to the shooting death of Denson in Brooklyn. In that statement, the defendant stated that he, Denson and a third person were smoking a blunt. When the blunt was passed to Denson, he dropped it on the floor. The defendant told Denson that he must pick it up and pass it without taking his turn. Denson refused to comply and took his turn anyway. The defendant then pointed the nine millimeter handgun at him. Although the defendant did not recall firing the gun, he fled the apartment immediately after the incident, and Denson was found dead from a gunshot wound a few hours later.

"The second statement concerned the shooting death of Thompson, which had occurred in New London just a few hours before Denson was killed in Brooklyn. In his statement, the defendant mentioned that he remembered pointing his gun at Thompson but did not remember it going off. The jury could have found from the testimony of one of the detectives, that the defendant, Ronald [Gadsden] and Thompson were smoking a blunt in Alexander's bathroom when Thompson dropped [the blunt]. Although blunt smoking protocol required that he pass it without taking his turn, Thompson disregarded the custom and took his turn anyway. This angered the defendant and caused him to point the handgun at Thompson. The defendant did not remem-

ber firing the gun, but after the incident he and [Gadsden] immediately left for New York.

"The defendant's version of the events is that the shooting was completely accidental. He claims that he wanted to show his friends his gun and as he pulled it out of his pants to show it to them, it discharged, killing Thompson. Not knowing what to do, he and [Gadsden] ran out of the house and made their way to New York." *State* v. *Holmes*, 59 Conn. App. 484, 485–87, 757 A.2d 639 (2000).

At trial, Gadsden, the only witness to the events giving rise to the murder charge against the defendant, successfully invoked his fifth amendment privilege against self-incrimination. The defendant claimed that Gadsden's testimony would exculpate him of the charges and was, thus, necessary to his defense. Accordingly, the defendant moved to have the trial court order the state either to grant immunity to Gadsden, or, in the alternative, dismiss the charges. The defendant also requested that the trial court itself grant immunity to Gadsden. The trial court denied the defendant's request, finding that it had no power to immunize the witness or to force the prosecution to do so. Thereafter, a jury convicted the defendant. The defendant appealed from the judgment of conviction to the Appellate Court, claiming, in part, that the trial court improperly had denied his request to order the state either to grant immunity to Gadsden or, in the alternative, to dismiss the charges. The Appellate Court affirmed the defendant's conviction. Id., 490. This appeal followed.[3]

---

[3] We granted certification limited to the following issue: "Under the circumstances of this case, did the defendant's right to due process and compulsory process require the state to either immunize a defense witness or to have the case against the defendant dismissed?" *State* v. *Holmes*, 254 Conn. 939, 761 A.2d 763 (2000). We note that the certified question may not be broad enough to cover the issue before the court. The defendant, at trial, requested that the trial court require the state to grant immunity to the defense witness or, in the alternative, dismiss the case. The defendant also requested that the trial court itself either grant immunity to the defense

The defendant contends that Gadsden's testimony would have corroborated the defendant's defense at trial, which was that the shooting had been accidental. The defendant further claims that, when Gadsden successfully invoked his fifth amendment privilege at trial, the defendant's state[4] and federal constitutional rights to due process and compulsory process required that Gadsden be given immunity or that the charges be dismissed.[5] We disagree.

As a threshold matter, we must first determine the applicable standard of review that governs our examination of the defendant's claims. The issue of whether a defendant's rights to due process and compulsory process require that a defense witness be granted immunity is a question of law and, thus, is subject to de novo review. See *United States* v. *Angiulo*, 897 F.2d 1169, 1190–92 (1st Cir.), cert. denied, 498 U.S. 845, 111 S. Ct. 130, 112 L. Ed. 2d 98 (1990) (engaging in de novo review of defendant's claim that due process and compulsory process required that defense witness be immunized).

witness or dismiss the charges against the defendant. We thus construe the certified issue broadly so as to encompass all of the defendant's claims on this issue insofar as they were raised in his briefs and at oral argument. See *Eldridge* v. *Eldridge*, 244 Conn. 523, 527 n.3, 710 A.2d 757 (1998).

[4] Because the defendant has not briefed adequately his state constitutional claims under the six factors set forth in *State* v. *Geisler*, 222 Conn. 672, 684–85, 610 A.2d 1225 (1992), we decline to review his state constitutional claims. "We have repeatedly apprised litigants that we will not entertain a state constitutional claim unless the [party] has provided an independent analysis under the particular provisions of the state constitution at issue . . . ." *State* v. *Robinson*, 227 Conn. 711, 721, 631 A.2d 288 (1993).

[5] The fifth amendment to the United States constitution provides in relevant part: "No person . . . shall be compelled in any criminal case to be a witness against himself . . . ."

The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor . . . ."

Article first, § 8, of the Connecticut constitution, as amended by articles seventeen and twenty-nine of the amendments, provides in relevant part: "In all criminal prosecutions, the accused shall have a right . . . to have compulsory process to obtain witnesses in his behalf . . . ."

"[A] defendant has a right under the compulsory process and due process clauses 'to present [his] version of the facts as well as the prosecution's to the jury so [that] it may decide where the truth lies.' " *State* v. *Morant*, 242 Conn. 666, 685 n.9, 701 A.2d 1 (1997), quoting *Washington* v. *Texas*, 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967). The compulsory process clause of the sixth amendment generally affords an accused the "right to call witnesses whose testimony is material and favorable to his defense . . . ." (Internal quotation marks omitted.) *Rock* v. *Arkansas*, 483 U.S. 44, 52, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987). The defendant claims that his rights to due process and compulsory process required that Gadsden be granted immunity because he would offer testimony exculpatory to the defendant.

We begin our analysis with the statutory provision concerning prosecutorial immunity for witnesses. General Statutes § 54-47a[6] authorizes the prosecution to

---

[6] General Statutes § 54-47a provides: "(a) Whenever in the judgment of the Chief State's Attorney, a state's attorney or the deputy chief state's attorney, the testimony of any witness or the production of books, papers or other evidence of any witness (1) in any criminal proceeding involving narcotics, arson, bribery, gambling, election law violations, felonious crimes of violence, any violation which is an offense under the provisions of title 22a, corruption in the executive, legislative or judicial branch of state government or in the government of any political subdivision of the state, fraud by a vendor of goods or services in the medical assistance program under Title XIX of the Social Security Act amendments of 1965, as amended, any violation of chapter 949c, or any other class A, B or C felony or unclassified felony punishable by a term of imprisonment in excess of five years for which the Chief State's Attorney or state's attorney demonstrates that he has no other means of obtaining sufficient information as to whether a crime has been committed or the identity of the person or persons who may have committed a crime, before a court or grand jury of this state or (2) in any investigation conducted by an investigatory grand jury as provided in sections 54-47b to 54-47g, inclusive, is necessary to the public interest, the Chief State's Attorney, the state's attorney, or the deputy chief state's attorney, may, with notice to the witness, after the witness has claimed his privilege against self-incrimination, make application to the court for an order directing the witness to testify or produce evidence subject to the provisions of this section.

grant immunity to state witnesses under certain circumstances. We explicitly have held that § 54-47a confers no such authority upon the courts with regard to defense witnesses. See *State* v. *Simms*, 170 Conn. 206, 210–11, 365 A.2d 821, cert. denied, 425 U.S. 954, 96 S. Ct. 1732, 48 L. Ed. 2d 199 (1976). Indeed, this court has held repeatedly that there is no authority, statutory or otherwise, enabling a trial court to grant immunity to defense witnesses. See *State* v. *McIver*, 201 Conn. 559, 566–68, 518 A.2d 1368 (1986); *State* v. *McLucas*, 172 Conn. 542, 561, 375 A.2d 1014, cert. denied, 434 U.S. 855, 98 S. Ct. 174, 54 L. Ed. 2d 126 (1977); *State* v. *Simms*, supra, 210–11. We have no occasion to revisit those holdings today.

We recognize that other courts have held that under certain compelling circumstances the rights to due process and compulsory process under the federal constitution require the granting of immunity to a defense witness. The federal Circuit Courts of Appeals have developed two theories pursuant to which the due process and compulsory process clauses entitle defense witnesses to a grant of immunity. They are the " 'effective defense' " theory, and the " 'prosecutorial

"(b) Upon the issuance of the order such witness shall not be excused from testifying or from producing books, papers or other evidence in such case or proceeding on the ground that the testimony or evidence required of him may tend to incriminate him or subject him to a penalty or forfeiture. No such witness may be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he is compelled to testify or produce evidence, and no testimony or evidence so compelled, and no evidence discovered as a result of or otherwise derived from testimony or evidence so compelled, may be used as evidence against him in any proceeding, except that no witness shall be immune from prosecution for perjury or contempt committed while giving such testimony or producing such evidence. Whenever evidence is objected to as inadmissible because it was discovered as a result of or otherwise derived from compelled testimony or evidence, the burden shall be upon the person offering the challenged evidence to establish a source independent of the compelled testimony or evidence."

misconduct' " theory. See *United States* v. *Angiulo,* supra, 897 F.2d 1190. Because such circumstances are not presented in this case, however, we need not decide whether either theory is a correct application of the due process or compulsory process clause.

Under the effective defense theory, as developed by the Third Circuit Court of Appeals, the trial court has the authority to grant immunity to a defense witness "when it is found that a potential defense witness can offer testimony which is clearly exculpatory and essential to the defense case and when the government has no strong interest in withholding . . . immunity . . . ." *Government of the Virgin Islands* v. *Smith,* 615 F.2d 964, 974 (3d Cir. 1980); see generally *People* v. *Lucas,* 12 Cal. 4th 415, 460, 907 P.2d 373, 48 Cal. Rptr. 2d 525 (1995), cert. denied, 519 U.S. 838, 117 S. Ct. 114, 136 L. Ed. 2d 66 (1996). The Third Circuit has held explicitly that under the effective defense theory "[i]mmunity will be denied if the proffered testimony is found to be ambiguous [or] not clearly exculpatory . . . ." *Government of the Virgin Islands* v. *Smith,* supra, 972. Because the defendant in the present case has not shown that Gadsden's testimony would be exculpatory, the effective defense theory of immunity, even if recognized, would not apply to this case.[7]

At trial, Gadsden successfully invoked his fifth amendment privilege to not testify. Thus, the only indication of the likely substance of his testimony is an unsigned statement that he had given to a detective of the New York police department after the defendant's arrest on murder charges there. A fair reading of that statement reveals that it was not exculpatory as to the

---

[7] The effective defense theory has not been well received by the other Circuit Courts of Appeals. See *United States* v. *Angiulo,* supra, 897 F.2d 1191. Because this theory invests the trial court with the authority to immunize defense witnesses, other Circuit Courts of Appeals have found this theory to implicate separation of powers principles. See *id.*

defendant. In fact, several aspects of the statement were inculpatory to the defendant.

The statement provided to the police begins: "I am in the New York police department 76[th] precinct detective office. I am afraid of [the defendant]. I don't know where his head is, he is just zoning since he doesn't take his medication." After describing the events leading up to the shooting of Thompson, Gadsden stated: "For no reason [the defendant] shot [Thompson]. I heard the shot, and [Thompson] fell to the floor . . . . [The defendant] said to me, 'Come on, we gotta leave.' I asked [the defendant] why he did it, and he said, 'I don't know, son.' That's why I think he really went crazy." At the end of the statement, the detective who took Gadsden's statement wrote: "Gadsden stated [that] if he signed [the] statement [the defendant] would know, and retaliate. Gadsden [was] terrified. He did not want to leave [the] precinct house." A fair reading of Gadsden's statement indicates that his testimony at trial would not *clearly* exculpate the defendant. We conclude, therefore, that even if we recognized the effective defense theory, the defendant has failed to satisfy the requisite burden of proof under the theory that would warrant its application in this case. See *Government of the Virgin Islands* v. *Smith*, supra, 615 F.2d 972, 974.

The defendant would fare no better under the prosecutorial misconduct theory of immunity.[8] This theory is based on the notion that "the due process clause [constrains] the prosecutor to a certain extent in her decision to grant or not to grant immunity." *United*

---

[8] This approach differs from the effective defense theory in two important respects. First, the focus of the inquiry is on the conduct of the prosecutor, rather than on the defendant's need for the evidence. See *Government of the Virgin Islands* v. *Smith*, supra, 615 F.2d 969–70. Second, the defendant's remedy under the prosecutorial misconduct theory is not a judicial grant of immunity; instead, the trial court requires that the state give the witness immunity, or, in the alternative, dismiss the charges against the defendant. See id.

*States* v. *Angiulo*, supra, 897 F.2d 1191. Under this theory, however, the constraint imposed by the due process clause is operative only when the prosecution engages in certain types of misconduct. See *United States* v. *Diaz*, 176 F.3d 52, 115 (2d Cir. 1999) (court must find that "the government, through its own over-reaching, has forced the witness to invoke the Fifth Amendment or, that the government has engaged in [the] discriminatory use of grants of immunity to gain a tactical advantage; second, the witness' testimony must be material, exculpatory and not cumulative; and third, the defendant has no other source to obtain the evidence"); *Curtis* v. *Duval*, 124 F.3d 1, 9 (1st Cir. 1997) (defendant must show that prosecution has intentionally distorted fact-finding process by harassing or intimidating potential witnesses or deliberately withholding immunity for purpose of hiding exculpatory evidence from jury); see also *United States* v. *Whitehead*, 200 F.3d 634, 640 (9th Cir.), cert. denied, 531 U.S. 885, 121 S. Ct. 202, 148 L. Ed. 2d 141 (2000); *United States* v. *Hooks*, 848 F.2d 785, 799 (7th Cir. 1988); *Government of the Virgin Islands* v. *Smith*, supra, 615 F.2d 968–69;[9] *Carter* v. *United States*, 684 A.2d 331, 341 (D.C. 1996); *State* v. *Peterson*, 532 N.W.2d 813, 822 (Iowa App. 1995).[10]

The defendant has not claimed that the prosecution engaged in impropriety or misconduct of any kind.

---

[9] The Court of Appeals for the Third Circuit employs both the effective defense theory and the prosecutorial misconduct theory. See *Government of the Virgin Islands* v. *Smith*, supra, 615 F.2d 974.

[10] We note that the Circuit Courts of Appeals differ in their formulations of the prosecutorial misconduct theory, and that in some contexts the differences might be significant. Compare *United States* v. *Whitehead*, supra, 200 F.3d 640 (defendant must show only that he has been deprived of relevant testimony as result of prosecutorial misconduct; testimony need not be exculpatory) with *United States* v. *Diaz*, supra, 176 F.3d 115 (defendant must show that he has been deprived of testimony that is material, exculpatory and not available from any other source). These differences do not concern us here, however, because the defendant has not made any claim of prosecutorial misconduct.

Thus, the defendant's claim would fail under the prosecutorial misconduct theory of immunity as well.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.