## STATE OF CONNECTICUT *v.* RASHEEN GIRAUD
### (SC 16016)

McDonald, C. J., and Borden, Norcott, Sullivan and Vertefeuille, Js.[1]

[1] Although Chief Justice McDonald reached the mandatory age of retirement before the date that this opinion was officially released, his continued participation in this panel is authorized by General Statutes § 51-198 (c).

The listing of justices reflects their seniority on this court as of the date of oral argument.

632

Argued January 11—officially released November 27, 2001

*Tracey M. Lane,* for the appellant (defendant).

*Christopher T. Godialis,* assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Dennis O'Connor,* senior assistant state's attorney, for the appellee (state).

*Opinion*

MCDONALD, C. J. The defendant appeals from a judgment of conviction, rendered after a jury verdict of guilty, of the crimes of murder, felony murder, robbery in the first degree, larceny in the second degree, and kidnapping in the first degree. The defendant claims that the trial court improperly failed to grant a defense witness immunity from prosecution, and that the trial court improperly found that that defense witness properly had invoked his fifth amendment right to remain silent. We disagree and affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At about 2 a.m. on November 26, 1995, the defendant, Rasheen Giraud, observed the victim, Corey Gamble, pull up in a car to use the telephone at a telephone booth at a Hartford gas station. The defendant approached the victim, asking for a ride to Charter Oak Terrace. Subsequently, the defendant called his companion, Cleve Ward, over to the telephone booth and told Ward that they had a ride. The defendant and Ward entered the car, the defendant in the front passenger seat and Ward in the backseat on the passenger side. The defendant then directed the victim to the boarded-up Rice Heights housing complex. There, the defendant pulled out a gun, put it to the victim's head and ordered him out of the car. The defendant took the victim to the back of the car and ordered him to remove his clothes. After the victim had removed his clothes, the defendant ordered him to a grassy area and forced him to his knees. The defendant then fired two gunshots at the victim, killing him. The defendant gathered the victim's clothing and placed it in the backseat of the car. Then the defendant drove the car from Rice Heights to Edwards Street, where he lived.

Later in the morning of November 26, 1995, Hartford police officers were directed to the parking lot at the rear of a building where they discovered the body of the victim, who was wearing only socks. Thereafter, the police interviewed the victim's mother, who told the police that in the early morning hours of November 26, she had asked her son to move a car that she had rented, a blue 1995 Pontiac Grand Am, from the front of her apartment building. She told police that this was the last time she had seen the victim.

The police then began searching for the car that the victim's mother had rented. At approximately 9:58 p.m. on November 27, 1995, Hartford police observed the car at a gas station in Hartford. The police pulled the

car over a short time later. The defendant was driving the car and was wearing boots and a leather coat that had belonged to the victim. In the pocket of the coat was the victim's electronic organizer. The police then obtained a search warrant for the defendant's apartment, and there recovered more of the victim's belongings: a pair of pants, a black leather belt that went with the coat and a set of keys.

The defendant was charged with murder, felony murder, robbery in the first degree, larceny in the second degree, robbery involving an occupied motor vehicle and kidnapping in the first degree. After a jury trial, in June, 1998, the defendant was found guilty on all counts. The trial court, *Barry, J.*, sua sponte, vacated the verdict with respect to the charge of robbery involving an occupied motor vehicle and rendered judgment of guilty on the remaining charges, sentencing the defendant to eighty-five years imprisonment, ten of which are nonsuspendable and nonreduceable. The defendant appealed to the Appellate Court and, pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c), we transferred the appeal to this court.

I

The defendant claims that the trial court improperly failed to grant a defense witness immunity from prosecution. We disagree.

At the trial, the defendant called Dennis Connolly as a defense witness. Before Connolly was sworn, the defendant moved that the state be compelled to grant Connolly immunity "relative to the testimony of Mr. Connolly with the exception [of] any perjury committed by him . . . ." The request did not distinguish between perjury committed before Connolly was granted immunity and perjury committed by him when testifying after such a grant of immunity. Immunity, of course, may not be " 'a license to lie' " while giving immunized testi-

mony. *United States* v. *Apfelbaum*, 445 U.S. 115, 124, 100 S. Ct. 948, 63 L. Ed. 2d 250 (1980).

In order to consider this claim, we examine the record before the trial court. The defendant told the court that Connolly had testified at the probable cause hearing[2] as a state's witness and had been given immunity by the state.[3] The defendant contended that, because "nothing

[2] Article first, § 8, of the constitution of Connecticut, as amended by articles seventeen and twenty-nine of the amendments, provides in relevant part: "No person shall be held to answer for any crime, punishable by death or life imprisonment, unless upon probable cause shown at a hearing in accordance with procedures prescribed by law . . . ."

General Statutes § 54-46a (a) provides in relevant part: "No person charged by the state . . . shall be put to plea or held to trial for any crime punishable by death or life imprisonment unless the court at a preliminary hearing determines there is probable cause to believe that the offense charged has been committed and that the accused person has committed it. . . ."

[3] General Statutes § 54-47a provides: "(a) Whenever in the judgment of the Chief State's Attorney, a state's attorney or the deputy chief state's attorney, the testimony of any witness or the production of books, papers or other evidence of any witness (1) in any criminal proceeding involving narcotics, arson, bribery, gambling, election law violations, felonious crimes of violence, any violation which is an offense under the provisions of title 22a, corruption in the executive, legislative or judicial branch of state government or in the government of any political subdivision of the state, fraud by a vendor of goods or services in the medical assistance program under Title XIX of the Social Security Act amendments of 1965, as amended, any violation of chapter 949c, or any other class A, B or C felony or unclassified felony punishable by a term of imprisonment in excess of five years for which the Chief State's Attorney or state's attorney demonstrates that he has no other means of obtaining sufficient information as to whether a crime has been committed or the identity of the person or persons who may have committed a crime, before a court or grand jury of this state or (2) in any investigation conducted by an investigatory grand jury as provided in sections 54-47b to 54-47g, inclusive, is necessary to the public interest, the Chief State's Attorney, the state's attorney, or the deputy chief state's attorney, may, with notice to the witness, after the witness has claimed his privilege against self-incrimination, make application to the court for an order directing the witness to testify or produce evidence subject to the provisions of this section.

"(b) Upon the issuance of the order such witness shall not be excused from testifying or from producing books, papers or other evidence in such case or proceeding on the ground that the testimony or evidence required of him may tend to incriminate him or subject him to a penalty or forfeiture.

ha[d] changed," the state should be required to grant Connolly "the same immunity" as a witness for the defense as it had granted to him as a witness for the state. Defense counsel stated he did not "have any case law to present," was "not sure if even any case law exists," but because of the circumstances the same immunity should be granted at the trial.

The state responded that Connolly had been given immunity at the probable cause hearing for making a false statement, a class A misdemeanor as to which the statute of limitations had, at the time of the trial, expired.[4] Defense counsel did not dispute this claim.[5] The court thereupon denied the defendant's request.

The defendant now argues in this court that we should empower trial courts to compel the state to grant immunity to defense witnesses in certain circumstances. The defendant acknowledges that no such rule now exists in Connecticut. *State* v. *McIver*, 201 Conn. 559, 566–67, 518 A.2d 1368 (1986); *State* v. *McLucas*,

No such witness may be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he is compelled to testify or produce evidence, and no testimony or evidence so compelled, and no evidence discovered as a result of or otherwise derived from testimony or evidence so compelled, may be used as evidence against him in any proceeding, except that no witness shall be immune from prosecution for perjury or contempt committed while giving such testimony or producing such evidence. Whenever evidence is objected to as inadmissible because it was discovered as a result of or otherwise derived from compelled testimony or evidence, the burden shall be upon the person offering the challenged evidence to establish a source independent of the compelled testimony or evidence."

[4] General Statutes § 53a-157b provides: "(a) A person is guilty of false statement in the second degree when he intentionally makes a false written statement under oath or pursuant to a form bearing notice, authorized by law, to the effect that false statements made therein are punishable, which he does not believe to be true and which statement is intended to mislead a public servant in the performance of his official function.

"(b) False statement in the second degree is a class A misdemeanor."

[5] Later, defense counsel argued that the statute of limitations did bar prosecution for that offense. See part II of this opinion.

172 Conn. 542, 561, 375 A.2d 1014, cert. denied, 434 U.S. 855, 98 S. Ct. 174, 54 L. Ed. 2d 126 (1977); *State* v. *Simms*, 170 Conn. 206, 211, 365 A.2d 821, cert. denied, 425 U.S. 954, 96 S. Ct. 1732, 48 L. Ed. 2d 199 (1976); *State* v. *Reis*, 33 Conn. App. 521, 526–27, 636 A.2d 872, cert. denied, 229 Conn. 901, 640 A.2d 118 (1994). The defendant argues, however, that this court should adopt a rule similar to that adopted by the United States Court of Appeals for the Second Circuit in *United States* v. *Burns*, 684 F.2d 1066 (2d Cir. 1982), cert. denied, 459 U.S. 1174, 103 S. Ct. 823, 74 L. Ed. 2d 1019 (1983). See *United States* v. *Diaz*, 176 F.3d 52, 115 (2d Cir. 1999). We recently recognized that some courts, such as the Second Circuit in *Burns*, have held that under certain circumstances the federal constitution might require the immunization of a defense witness. We previously declined, however, to decide the merits of the theories of those cases in the absence of circumstances that would give rise to their application. See *State* v. *Holmes*, 257 Conn. 248, 254–55, 777 A.2d 627 (2001). We do so again in the present case.

The defendant did not bring *Burns* to the attention of the trial court, nor did he set forth before the trial court any circumstances required to invoke *Burns*. Under *Burns*, "[t]o sustain a requirement that use immunity be granted, a court must find that: (1) the government has engaged in discriminatory use of immunity to gain a tactical advantage or, through its own overreaching, has forced the witness to invoke the Fifth Amendment; and (2) the witness' testimony will be material, exculpatory and not cumulative and [3] is not obtainable from any other source." *United States* v. *Burns*, supra, 684 F.2d 1077. The requirements of *Burns* present a very difficult burden for a defendant to meet. "[A]lthough our test for requiring the government to grant use immunity has been in place for at least eight years, we have yet to be presented with a case in which

the defendant gets over the first hurdle, let alone succeeds entirely." *United States* v. *Bahadar*, 954 F.2d 821, 826 (2d Cir. 1992).

The defendant's perfunctory statement that "nothing ha[d] changed" did not meet the *Burns* requirements.[6] The defendant did not establish any discriminatory use of immunity by the state. Connolly's "invocation of the fifth amendment was not the result of a discriminatory use of immunity by the [state], nor of any other prosecutorial overreaching. In fact, it seemed to be solely the result of [the witness'] own willingness to change his story." Id. We conclude, therefore, again in the words of the Second Circuit, that the defendant "cannot vault the first hurdle of the *Burns* . . . test . . . ." Id. Accordingly, we decline, as we did in *Holmes*, to consider the claim for defense witness immunity in the absence of the circumstances that might give rise to such a claim.

Moreover, the defendant asked that the trial court accord Connolly "the same immunity" as a defense witness that he had received as a state's witness. The immunity provided at the probable cause hearing was for making a false statement, an offense for which the statute of limitations barred prosecution at the time of trial. It therefore would have been meaningless to grant the request.

## II

The defendant also claims that the trial court improperly found that Connolly's invocation of his fifth amendment right against self-incrimination was valid. The defendant contends that there was no possibility that

---

[6] On appeal, the defendant presents facts never presented to the trial court when it was asked to rule. We will adhere to reviewing only claims properly preserved in the trial court; see *State* v. *Evans*, 165 Conn. 61, 69, 327 A.2d 576 (1973); in the absence, as here, of plain error or a showing that *State* v. *Golding*, 213 Conn. 233, 240, 567 A.2d 823 (1989), applies.

Connolly's answers could have subjected him to prosecution and that the immunity granted at the probable cause hearing continued at trial. We disagree.

We again review the record before the trial court. After the trial court denied the request for immunity, the defendant called Connolly to the witness stand. Accompanied by his own counsel, Connolly invoked the privilege against self-incrimination. The defendant objected, claiming that Connolly's "only exposure . . . would be as to false statements." He argued that the charge was a misdemeanor and that the statute of limitations had run regarding false statement and, therefore, that "exposure would be nonexistent . . . ." Defense counsel then stated that it was "not clear" to him what Connolly's "exposure or what his potential incrimination might be . . . ." When the court remarked that it did not "understand that from you or our previous discussions," defense counsel replied that if Connolly's "concern is perjury then I guess there would be exposure there . . . ." Defense counsel then reminded the court that his request for immunity did not "encompass perjury."

The state responded that the prior grant of immunity at the probable cause hearing was "limited to false statement" and that Connolly was still exposed to perjury charges for his prior testimony at the probable cause hearing. The state argued that Connolly was exposed as to his testimony at the probable cause hearing and potential perjury if he testified falsely at the trial. The state pointed out that the statute of limitations as to perjury arising from testimony at the 1996 probable cause hearing had not run. The defendant did not reply to this argument.

The court then upheld Connolly's invocation of the right against self-incrimination. Immediately thereafter, by agreement, the defendant and the state introduced

Connolly's police statement and the transcript of his testimony at the probable cause hearing. Those exhibits were contradictory as to whether Connolly had seen the defendant with the victim early on the morning of the killing.[7]

The standard for determining whether to permit invocation of the privilege against self-incrimination is well established. To reject the invocation it must "be *perfectly clear*, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] *cannot possibly* have [a] tendency to incriminate" the witness. (Emphasis in original; internal quotation marks omitted.) *State* v. *Williams*, 200 Conn. 310, 319, 511 A.2d 1000 (1986), citing *State* v. *Simms*, supra, 170 Conn. 209. The right to the privilege "does not depend upon the likelihood of prosecution but upon the possibility of prosecution." *State* v. *Williams*, supra, 319.

The trial court was told that Connolly had received immunity from prosecution for making a false statement to the police when called as a state's witness at the probable cause hearing. The state's attorney argued at the trial that, although the statute of limitations would bar prosecution for making an earlier false statement, Connolly's testimony at the probable cause hearing still could subject him to prosecution for perjury. Defense counsel had conceded that Connolly could face exposure to a perjury prosecution. From this, the court could have inferred that Connolly was now being called to testify as to his prior testimony at the probable cause hearing. It was apparent on the record, therefore, that Connolly faced the possibility of perjury charges arising

---

[7] The trial court was required to rule before Connolly's December 8, 1995 statement, in which he identified a photograph of the defendant as the person with whom he saw the victim in the early morning of November 26, 1995, and his April, 1996 probable cause testimony repudiating that identification were introduced into evidence. See footnote 6 of this opinion.

out of his probable cause hearing testimony and that his trial testimony might incriminate him. Connolly would have been "well within his rights to refuse to testify at the . . . trial, given the real danger that truthful answers would reveal that he committed perjury" at the probable cause hearing. *United States* v. *DeSalvo*, 26 F.3d 1216, 1222 (2d Cir. 1994), citing *United States* v. *Housand*, 550 F.2d 818, 823 (2d Cir. 1977).

Here the trial court was faced with the defendant's objection to the invocation of the privilege against self-incrimination because there could be no incrimination. At the same time, however, the defendant conceded that there could be incrimination for perjury. In light of this concession, the trial court properly found Connolly's invocation of the privilege valid. It is well established law that we will not review trial actions induced by the party challenging the ruling on appeal. See *State* v. *Turner*, 252 Conn. 714, 728–29, 751 A.2d 372 (2000).

The defendant also argues that Connolly's probable cause hearing immunity continued at the trial. The defendant did not make this argument before the trial court and did not give the trial court any facts supporting such a claim. Accordingly, the claim was not properly preserved. *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989); *State* v. *Evans*, 165 Conn. 61, 327 A.2d 576 (1973). Moreover, the record is clear that immunity was granted at the probable cause hearing only as to Connolly's December 8, 1995 sworn statement to the police and concerned the crime of making a false statement to the police. Both the trial judge and the state made it clear at the probable cause hearing that the immunity offered to Connolly did not and could not apply if Connolly perjured himself at the hearing. The state's attorney stated at the probable cause hearing: "[Connolly's attorney] has represented to me [that] his client's concern [is] that he would not testify unless given the opportunity to be free from prosecution for

any, what he perceives as, errors in the statement. I have no objection to granting that. I did indicate to [Connolly's attorney], however, that there would be no immunity, obviously, from any perjury . . . ." The probable cause hearing. . judge stated, "[t]he record should note [that] the immunity, obviously, does not extend to perjury."

Accordingly, we conclude that the trial court properly found that Connolly validly invoked his fifth amendment privilege against self-incrimination.

The judgment is affirmed.

In this opinion the other justices concurred.