STATE OF CONNECTICUT *v.* JASON FAISON
(AC 28476)

McLachlan, Gruendel and Borden, Js.

Argued October 28, 2008—officially released January 27, 2009

*Charles F. Willson*, special public defender, for the appellant (defendant).

*Robin S. Schwartz*, assistant state's attorney, with whom, on the brief, were *John A. Connelly* and *Gail P. Hardy*, state's attorneys, for the appellee (state).

*Opinion*

GRUENDEL, J. The defendant, Jason Faison, appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1), kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A), and conspiracy to commit kidnapping in the first degree in violation of General Statutes §§ 53a-48 and 53a-92 (a) (2) (A). He claims that the trial court improperly denied his motions (1) seeking immunity for a certain witness and (2) to introduce testimonial evidence from a defense investigator. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In the summer of 2005, the victim, a nineteen year old female, was unemployed and without a home.[1] The defendant invited the victim to move into the apartment he shared with his girlfriend, Jennifer Sierra, in Waterbury, and the victim accepted. Days later, the defendant notified the victim that she would have to help pay the rent. He also told her that he "had an idea," namely, prostitution.

One week later, the victim began working as a prostitute. Three or four times a week, the defendant drove the victim from Waterbury to the same street corner in the Bronx, New York. The defendant was her pimp,

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual assault, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

and, after each day of work, she surrendered her earnings to the defendant. After a few weeks, the victim informed the defendant that she was miserable and no longer wanted to work for him, but the defendant "wouldn't let [her] leave" and "was always around." Approximately one month after first working for the defendant, the victim ran away one afternoon when the defendant left to play basketball. In the following weeks, the defendant called her cellular telephone several times each day, but the victim never answered.

More than one month later, on August 12, 2005, the victim received a call from Alisha Pickwood, a prostitute who worked on the same street corner as the victim. Pickwood told the victim that she, too, wanted to leave the world of prostitution and asked the victim to pick her up in the Bronx because she was homeless and penniless. The victim agreed and proceeded to the Bronx, where she met Pickwood. Upon arriving, the victim saw the defendant's vehicle and informed Pickwood that she had to leave. As the victim turned to leave, Pickwood struck her on the back of her head. The victim began to scream. At that moment, the defendant's cousin, Ronald Troy Brooks, approached the victim and told her that he would kill her if she did not shut up. Brooks and Pickwood forced the victim into the vehicle driven by the defendant. The defendant cautioned the victim that she had made a big mistake by leaving him as the others in the vehicle punched and kicked the victim. Pickwood rifled through the victim's purse and handed an eyebrow trimmer to Sierra, who was seated in the front passenger seat. Sierra then stabbed the victim in the arm with the trimmer.

The vehicle arrived at 35 Bellevue Street in Waterbury sometime thereafter. The victim was taken to the basement and ordered to disrobe. The victim complied because she "didn't want them to kill me." At that point, Brooks, Pickwood and Sierra, with the defendant's

encouragement, repeatedly struck the victim and Brooks raked her face against a concrete wall. They then tied the victim to a chair. Brooks poured buckets of cold water on the victim as Pickwood and Sierra whipped the victim with coat hangers. While this transpired, the victim was repeatedly asked if she wanted to go back to work for the defendant; she did not reply. The victim also was informed that they knew people who would kill her. Laughing, Pickwood and Sierra photographed the victim with their cellular telephone cameras. Eventually, the defendant, Brooks, Pickwood and Sierra left the basement to get food.

Roughly two hours later, the defendant and Brooks returned. They untied the victim, and Brooks digitally penetrated the victim's vagina. The defendant exposed his penis and told the victim that unless she performed fellatio on him, Sierra would sodomize her with a stick. Scared, the victim complied. After ejaculating, the defendant asked the victim if she wanted another chance to work for him, and she said no. The victim then was permitted to dress and leave the property. Before she left, Brooks warned the victim not to "go to the cops because [he had] people around here." After exiting 35 Bellevue Street, the victim approached a woman on the street, who took the victim to the police department. There, the victim provided sworn statements and had her injuries photographed. The police later transferred the victim to a hospital, where rape kit tests were performed. The defendant's arrest followed.

The defendant subsequently was tried before the jury, which found him guilty of sexual assault in the first degree, kidnapping in the first degree and conspiracy to commit kidnapping in the first degree. The court rendered judgment accordingly and sentenced the defendant to a total effective term of forty years incarceration. From that judgment, the defendant appeals.

I

The defendant first claims that the court improperly denied his motion seeking immunity for Steven Natale, a friend of the defendant and former boyfriend of the victim. He contends that the court should have granted Natale immunity under the effective defense theory. Because the defendant has not properly preserved that claim, we decline to afford it review.

After the defendant subpoenaed Natale as a defense witness at trial, Natale invoked his fifth amendment rights and declined to testify. The court determined that Natale's assertion of those rights was valid, and counsel for the defendant agreed. The defendant then asked the court to grant immunity to Natale:

"[Defense Counsel]: I'm asking that Your Honor order the state to grant him immunity so that he may testify.

"The Court: Do you have any authority for that proposition that the court has the ability to do that when all the case law is to the contrary?

"[Defense Counsel]: No.

"The Court: Anything else?

"[Defense Counsel]: And, if not, I ask that Your Honor give him immunity to testify.

"The Court: Do you have any case law that the court has the ability to give someone immunity?

"[Defense Counsel]: No, Your Honor.

"The Court: In fact, the case law is to the contrary. Anything else?

"[Defense Counsel]: Regarding those two motions, no."

The defendant did not raise the issue of immunity for Natale at any other point in the trial proceedings.

On appeal, the defendant claims that the effective defense theory should apply. In *State* v. *Holmes,* 257 Conn. 248, 777 A.2d 627 (2001), cert. denied, 535 U.S. 939, 122 S. Ct. 1321, 152 L. Ed. 2d 229 (2002), our Supreme Court discussed that doctrine. "Under the effective defense theory . . . the trial court has the authority to grant immunity to a defense witness when it is found that a potential defense witness can offer testimony which is clearly exculpatory and essential to the defense case and when the government has no strong interest in withholding . . . immunity . . . . The Third Circuit [Court of Appeals] has held explicitly that under the effective defense theory [i]mmunity will be denied if the proffered testimony is found to be ambiguous [or] not clearly exculpatory . . . ." (Citations omitted; internal quotation marks omitted.) Id., 255. Notably, the *Holmes* court did not adopt the effective defense theory as a matter of Connecticut law, stating that it "need not decide whether [the effective defense] theory is a correct application of the due process or compulsory process clause."[2] Id.; see also *State* v. *Kirby,* 280 Conn. 361, 404, 908 A.2d 506 (2006).

It is fundamental that claims of error must be distinctly raised and decided in the trial court. As a result, Connecticut appellate courts "will not address issues

---

[2] The court further noted that "[t]he effective defense theory has not been well received by the other Circuit Courts of Appeals." *State* v. *Holmes,* supra, 257 Conn. 255 n.7; see also *United States* v. *Mohney,* 949 F.2d 1397, 1401 (6th Cir. 1991) (effective defense theory rejected because "it would violate separation of powers to recognize an inherent judicial right to grant immunity when immunity is a legislative creation explicitly entrusted to the executive branch" and because it "could also impair the subsequent prosecution of the witness"), cert. denied, 504 U.S. 910, 112 S. Ct. 1940, 118 L. Ed. 2d 546 (1992); *United States* v. *Angiulo,* 897 F.2d 1169, 1191 (1st Cir.) (following adoption of effective defense theory by United States Court of Appeals for the Third Circuit, "theory has been rejected by virtually every other court that has considered the issue"), cert. denied sub nom. *Granito* v. *United States,* 498 U.S. 845, 111 S. Ct. 130, 112 L. Ed. 2d 98 (1990).

not decided by the trial court." *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 52, 717 A.2d 77 (1998); see also *Crest Pontiac Cadillac, Inc.* v. *Hadley*, 239 Conn. 437, 444 n.10, 685 A.2d 670 (1996) (claims neither addressed nor decided by trial court not properly before appellate tribunal); *State* v. *Miller*, 186 Conn. 654, 658, 443 A.2d 906 (1982) ("[o]nly in the most exceptional circumstances will this court consider even a constitutional claim not properly raised and decided in the trial court"). Similarly, Practice Book § 60-5 provides in relevant part that our appellate courts "shall not be bound to consider a claim unless it was distinctly raised at the trial . . . ." As our Supreme Court recently observed, "[t]he reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court or the opposing party to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." (Internal quotation marks omitted.) *State* v. *Dalzell*, 282 Conn. 709, 720, 924 A.2d 809 (2007). Thus, the requirement of Practice Book § 60-5 that the claim be raised distinctly "means that it must be so stated as to bring to the attention of the court the *precise* matter on which its decision is being asked. . . . *Woodruff* v. *Butler*, 75 Conn. 679, 682, 55 A. 167 (1903)." (Emphasis in original; internal quotation marks omitted.) *State* v. *Carter*, 198 Conn. 386, 396, 503 A.2d 576 (1986).

The defendant did not meet that requirement. His general exhortation to grant judicial immunity to Natale was without legal support. When the court inquired as to the basis of that request, the defendant provided none. The precise matter raised in this appeal—the effective defense theory—never was presented to the trial court. Accordingly, we decline to review the merits of that claim.

In his reply brief, the defendant seeks to prevail pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). It is well settled that *Golding* cannot be raised for the first time by way of reply brief. See *State* v. *McKenzie-Adams*, 281 Conn. 486, 533 n.23, 915 A.2d 822 ("a party may seek to prevail on unpreserved claims . . . if the claims are constitutional in nature, under *Golding*, if the party affirmatively requests and adequately briefs his entitlement to such review in his main brief"), cert. denied, 552 U.S. 888, 128 S. Ct. 248, 169 L. Ed. 2d 148 (2007); *Lebron* v. *Commissioner of Correction*, 274 Conn. 507, 532, 876 A.2d 1178 (2005) (declining to review constitutional claims under *Golding* because habeas petitioner had not briefed entitlement to *Golding* until he filed reply brief); *State* v. *Garvin*, 242 Conn. 296, 312, 699 A.2d 921 (1997) ("[t]he reply brief is not the proper vehicle in which to provide this court with the basis for our review under [*Golding*] analysis" [internal quotation marks omitted]); *Embalmers' Supply Co.* v. *Giannitti*, 103 Conn. App. 20, 61, 929 A.2d 729 (court will not consider request for *Golding* review raised for first time in reply brief), cert. denied, 284 Conn. 931, 934 A.2d 246 (2007).

## II

The defendant next claims that the court improperly denied his motion to introduce testimonial evidence from a defense investigator. At trial, the defendant sought to have his private investigator, Tony Smith, testify as to various statements made to him by Natale. We conclude that the court did not abuse its discretion in precluding that testimony.

At the outset, we note that the sixth amendment to the United States constitution "require[s] that criminal defendants be afforded a meaningful opportunity to present a complete defense. . . . The defendant's sixth amendment right, however, does not require the trial

court to forgo completely restraints on the admissibility of evidence. . . . Generally, an accused must comply with established rules of procedure and evidence in exercising his right to present a defense." (Citations omitted; internal quotation marks omitted.) *State* v. *Cerreta*, 260 Conn. 251, 260–61, 796 A.2d 1176 (2002). It follows, then, that the right to present a defense "does not include a right to present evidence that properly is excluded under the rules of evidence." *State* v. *Sun*, 92 Conn. App. 618, 629, 886 A.2d 1227 (2005); see also *State* v. *West*, 274 Conn. 605, 625, 877 A.2d 787 (constitution does not require defendant be permitted to present " 'every piece of evidence he wishes' "), cert. denied, 546 U.S. 1049, 126 S. Ct. 775, 163 L. Ed. 2d 601 (2005).

Evidentiary determinations generally are reviewed under the abuse of discretion standard. "Unless an evidentiary ruling involves a clear misconception of the law, [t]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling . . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State* v. *Griggs*, 288 Conn. 116, 136–37, 951 A.2d 531 (2008).

The following additional facts are germane to the defendant's claim. Following the denial of the defendant's motion seeking immunity for Natale, the defendant moved to present, in lieu of Natale's testimony, Smith's testimony "as to what Mr. Natale told him." The state objected to that testimony on the ground of hearsay. The court then permitted Smith to testify as an offer of proof outside the presence of the jury. On direct examination, Smith testified that he interviewed

Natale on February 28, 2006. Smith testified that Natale told him that he knew the victim and that the victim previously had falsely accused him of having a gun and holding her against her will. Smith further testified that Natale told him that the victim had told Natale that she had lied about those accusations and that she was lying in the present case. Smith testified that Natale also stated that the victim had made false allegations against a man named Matt that led to a conviction and a sentence of ten years imprisonment. Smith testified that Natale stated that the victim admitted to him that "she lied about the allegations regarding [the defendant]." Smith testified that he prepared a report concerning his interview with Natale. On cross-examination, Smith admitted that he lacked any personal knowledge concerning the matter to which he had just testified. In response to an inquiry from the court, Smith testified that Natale had not signed a written statement, that Natale's statements were not made under oath and that the interview involved multiple conversations with Natale.

Following that offer of proof, the defendant moved to admit Smith's testimony under the residual exception to the hearsay rule. In response, the state argued that Smith's testimony was not supported by any guarantees of trustworthiness or reliability. The court agreed with the state and precluded that testimony.

With respect to the principles that govern application of the hearsay rule in criminal cases, "[a]n out-of-court statement offered to establish the truth of the matter asserted is hearsay. . . . As a general rule, such hearsay statements are inadmissible unless they fall within a recognized exception to the hearsay rule. . . . A hearsay statement that does not fall within one of the traditional exceptions to the hearsay rule nevertheless may be admissible under the residual exception to the hearsay rule provided that the proponent's use of the

statement is reasonably necessary and the statement itself is supported by equivalent guarantees of trustworthiness and reliability that are essential to other evidence admitted under traditional exceptions to the hearsay rule." (Citations omitted; internal quotation marks omitted.) *State* v. *Aaron L.*, 272 Conn. 798, 812, 865 A.2d 1135 (2005); see also Conn. Code Evid. § 8-9. A court's conclusion as to whether certain hearsay statements bear the requisite indicia of trustworthiness and reliability necessary for admission under the residual exception to the hearsay rule is reviewed for an abuse of discretion. *State* v. *Saucier*, 283 Conn. 207, 219, 926 A.2d 633 (2007).

In the present case, several considerations support the court's conclusion not to admit under the residual exception the hearsay and double hearsay statements contained in Smith's testimony. First, Natale did not make his statements under oath, a critical component of the trustworthiness and reliability calculus. See *State* v. *Henry*, 72 Conn. App. 640, 663, 805 A.2d 823, cert. denied, 262 Conn. 917, 811 A.2d 1293 (2002). Second, Natale made his statements to a private investigator rather than law enforcement personnel. As such, Natale did not face the prospect of prosecution should his statements prove to be false. See General Statutes § 53a-157b (a) ("person is guilty of false statement in the second degree when he intentionally makes a false written statement under oath or pursuant to a form bearing notice, authorized by law, to the effect that false statements made therein are punishable, which he does not believe to be true and which statement is intended to mislead a public servant in the performance of his official function"). Third, in *State* v. *Sharpe*, 195 Conn. 651, 491 A.2d 345 (1985), the court stated that "trustworthiness and reliability can be found in a variety of situations," including when the declarant did not know the defendant and provided the statement to the police. Id.,

665. Not only did Natale not make the statements to the police, he further was a friend of the defendant. That friendship undermines the trustworthiness and reliability of his statements. See *State* v. *Oquendo*, 223 Conn. 635, 668, 613 A.2d 1300 (1992); *State* v. *Bryant*, 61 Conn. App. 565, 576, 767 A.2d 166 (2001). Natale's statement that the victim previously had accused him falsely of having a gun and holding her against her will likewise raises a question as to the trustworthiness and reliability of his statements. In that vein, we note that "cross-examination has appropriately been described as the greatest legal engine ever invented for the discovery of truth. . . . [A]n important function of cross-examination is the exposure of a witness' motivation in testifying." (Citation omitted; internal quotation marks omitted.) *State* v. *Oquendo*, supra, 668. Natale's unavailability for cross-examination diminished the trustworthiness and reliability of his statements. Id. Indulging every reasonable presumption in favor of upholding the court's ruling, we conclude that the court did not abuse its discretion in precluding Smith's testimony.

The judgment is affirmed.

In this opinion the other judges concurred.