******************************************************

    The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

    All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

    The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# PEDRO GONZALEZ *v.* COMMISSIONER OF CORRECTION
## (AC 44229)

Prescott, Elgo and Suarez, Js.

*Syllabus*

The petitioner, who had been convicted of various criminal offenses, sought a writ of habeas corpus, alleging that his trial counsel had rendered ineffective assistance. During the pendency of his habeas action, the petitioner filed a motion seeking his immediate release from the custody of the respondent Commissioner of Correction. The petitioner claimed that his continued confinement during the COVID-19 pandemic constituted an unnecessary risk to his life and that he had a 9 percent chance of survival if he contracted the COVID-19 virus while incarcerated. The habeas court conducted a remote hearing during which it heard testimony from the petitioner and F, the acting regional medical director for the Department of Correction. The court denied the petitioner's motion, concluding that he failed to show that, during the early months of the pandemic, the respondent acted with deliberate indifference to his medical needs in violation of the eighth amendment to the United States constitution. The court reasoned that the respondent had provided the petitioner with adequate medical care and taken appropriate measures to minimize his exposure to and risk of contracting COVID-19. The habeas court granted the petitioner certification to appeal. On appeal, he claimed that the habeas court improperly concluded that he had not established the deliberate indifference necessary to constitute an eighth amendment violation or that the respondent violated his rights under article first, §§ 8 and 9, of the Connecticut constitution. During the pendency of his appeal, the petitioner declined the department's offer to provide him with doses of a COVID-19 vaccine that had been approved by the federal Food and Drug Administration. *Held*:

1. The respondent's claim that the petitioner's appeal was moot because he declined the department's offer to vaccinate him was unavailing; the petitioner's appeal concerned the adequacy of the measures taken by the respondent to prevent transmission of the COVID-19 virus, and, as it was undisputed that the petitioner could contract the virus even if he had accepted the vaccination offer, an actual controversy existed regarding the adequacy of the measures taken by the respondent; accordingly, the appeal was not moot, as this court could provide the petitioner with practical relief if it were to conclude that the respondent's conduct during the early months of the pandemic constituted deliberate indifference to the petitioner's health and safety.

2. The habeas court properly concluded as a matter of law that the petitioner had not met his burden of demonstrating the deliberate indifference necessary to establish an eighth amendment violation: the record substantiated the court's determination that the respondent's response to the COVID-19 outbreak in the state's correctional facilities was reasonable, and that the respondent had provided adequate medical care and took appropriate measures to minimize the petitioner's exposure to and risk of contracting the virus, as the court, being the sole arbiter of witness credibility, credited F's testimony regarding the petitioner's medical issues and the department's measures to safeguard his health; moreover, the court had before it declarations made under penalty of perjury by department officials who outlined the screening, testing and isolation protocols that were implemented, as well as measures that were implemented regarding social distancing, personal protective equipment and cleaning, and, in light of those measures, this court could not conclude that the respondent's conduct was an unreasonable reaction to the risk posed to the petitioner that amounted to the recklessness required under law.

3. The petitioner's state constitutional claim that his continued confinement constituted cruel and unusual punishment under article first, §§ 8 and 9, of the state constitution was unavailing under the circumstances of his case:

a. The petitioner's claim was unpreserved, as he did not indicate in his motion for immediate release that he was pursuing such a claim, he presented no evidence or argument that contemporary standards of decency compelled the conclusion that the respondent violated his state constitutional rights and he did not seek an articulation of the habeas court's decision with respect to any state constitutional claim.

b. Although review under *State* v. *Golding* (213 Conn. 233) is available in habeas appeals for unpreserved constitutional claims that could have been raised in the habeas petition or which challenge the actions of the habeas court, such review was unavailable in the petitioner's circumstances, as he did not distinctly raise a state constitutional claim in his habeas petition or invoke the protections of the state constitution during the hearing on his motion for immediate release; moreover, despite the petitioner's assertion that the habeas court should have construed his motion to include a state constitutional claim, under the applicable rule of practice (§ 5-2), that court was under no obligation to decide a question of law that was not distinctly stated to it.

Argued January 6—officially released April 5, 2022

*Procedural History*

Motion for release from incarceration, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Oliver*, *J.*; judgment denying the motion, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Jennifer B. Smith*, for the appellant (petitioner).

*James W. Donohue*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, and *Clare Kindall*, solicitor general, for the appellee (respondent).

*Opinion*

ELGO, J. The petitioner, Pedro Gonzalez, appeals from the judgment of the habeas court denying his motion for immediate release from the custody of the respondent, the Commissioner of Correction, filed in connection with his pending habeas corpus proceeding. On appeal, the petitioner claims that (1) the court improperly concluded that he had not proven the requisite deliberate indifference to establish a violation under the eighth amendment to the United States constitution and (2) the respondent violated his rights under article first, §§ 8 and 9, of the state constitution. Both claims are predicated on the petitioner's allegation that his continued confinement during the COVID-19 pandemic constitutes an unnecessary risk to his life. We affirm the judgment of the habeas court.

In May, 2016, the petitioner pleaded guilty to various criminal offenses and was sentenced to a term of twelve years of incarceration, execution suspended after nine years, and three years of probation. In March, 2017, the petitioner filed a petition for a writ of habeas corpus, alleging, inter alia, that his guilty plea was involuntary and that his trial counsel had rendered ineffective assistance.

While that habeas corpus action was pending, the COVID-19 pandemic swept the globe. On January 31, 2020, the secretary of the United States Department of Health and Human Services declared a public health emergency in the United States. On March 10, 2020, Governor Ned Lamont declared a public health emergency and a civil preparedness emergency throughout the state of Connecticut. On March 13, 2020, President Donald J. Trump issued a proclamation that the COVID-19 outbreak in the United States constituted a national emergency. In response, numerous emergency measures were enacted at both the state and federal level.

On May 19, 2020, the petitioner, acting in a self-represented capacity, filed a "motion for immediate release" with the habeas court.[1] In that motion, the petitioner alleged that, due to multiple medical conditions, his risk of contracting the COVID-19 virus while incarcerated constituted an unnecessary risk to his life. More specifically, the petitioner alleged that, "[i]f [he] is not release[d], and does get infected with COVID-19, [his] chances of surviving the virus is 9 [percent]. Simply put, [the petitioner] will die." Because less than four years remained on his sentence, the petitioner alleged that his health was "unnecessarily compr[om]ised by continued incarceration . . . ."[2] By order dated May 20, 2020, the court ordered the respondent to furnish a copy of the petitioner's medical records to the petitioner and the clerk of the court; the respondent complied with that request.[3]

The respondent filed an objection to the petitioner's

motion on May 28, 2020. Appended to that pleading were the sworn declarations of Warden Antonio Santiago; Warden Kristine Barone; Byron Kennedy, Chief Medical Officer for the Department of Correction (department); and Melinda Jarjura, a registered nurse employed by the department.[4] A copy of the interim COVID-19 guidelines issued by the United States Centers for Disease Control and Prevention (CDC) also accompanied the respondent's objection.

On May 29, 2020, the court conducted a remote hearing on the petitioner's motion.[5] At the outset, the petitioner confirmed that he had received the four sworn declarations submitted by the respondent; the petitioner, the respondent, and the court all discussed those declarations during that hearing.[6] The only evidence presented by the petitioner was his own testimony.[7] In addition, the respondent offered the testimony of Carey Freston, a licensed physician who served as the department's acting regional medical director.

In its June 16, 2020 memorandum of decision, the court found the following relevant facts. "The petitioner is currently housed at [MacDougall-Walker] Correctional Institution in Suffield . . . . He has a current diagnosis of central pulmonary sarcoidosis, a disease which causes complications within lung tissue. He also has a diagnosis of asthma. Further, the petitioner has been diagnosed with allergic rhinitis (described by Freston as a 'drippy nose'), melanonychia (described by Freston as a noncancer related darkness of the finger nails), self-described claustrophobia, ectopic dermatitis (a 'skin rash'), back pain, neuropathic pain, seasonal allergies . . . gastro-esophageal reflux disease, vitamin D deficiency, migraines, epigastric discomfort, and pleuritic chest pain. He has no symptoms commonly associated with having contracted COVID-19. . . .

"Freston is board certified in family medicine and is a certified correctional health professional. He testified credibly to the evaluation, diagnosis and treatment of the petitioner's several medical issues. Freston testified that the petitioner's pulmonary sarcoidosis results in trouble breathing and inflammation of the lungs. Although this diagnosis places the petitioner at increased risk of contracting COVID-19 and, if contracted, at increased risk for adverse health consequences, [Freston] testified credibly that the sarcoidosis is being monitored by [the department's] medical staff and is presently stable, requiring no prescription medications.

"Freston testified to [department's] measures designed to safeguard the petitioner's health. The petitioner's asthma, another preexisting condition that increases the petitioner's risk of contracting COVID-19 and, if contracted, an increased risk for adverse health consequences, has been evaluated and monitored through pulmonary functioning tests. Although the

asthma has worsened over time to the point where it has been classified as 'moderate-persistent,' it is being treated with an inhaled steroid. The court finds that there is a lack of evidence to support the petitioner's contention of the existence of a large mass present in the front lobe of the petitioner's brain, as opposed to a small area of a single abnormality as revealed by a brain scan MRI.

"Freston testified credibly that inmates' health, including the petitioner's, is monitored, and they are screened in an effort to identify symptoms commonly associated with having contracted COVID-19. Those inmates testing positive, showing symptoms or refusing a COVID-19 test are isolated from inmates testing negative.

"A review of the testimony and exhibits leads the court to the conclusion that the petitioner has failed to show 'deliberate indifference' to his medical needs. . . . The evidence presented supports the conclusion that the respondent has provided adequate medical care, has taken appropriate measures to minimize the petitioner's exposure and risk to COVID-19 and has not been deliberately indifferent to any of the risks to the petitioner's health. . . . The court finds that the several, recent protective and mitigating measures testified to by [Freston] demonstrate a thoughtful, sincere, and organized effort by [the department] to prevent and reduce the spread of this virus through the petitioner's [correctional] facility." (Citations omitted.) The court thus concluded that the petitioner had not established an eighth amendment violation and, accordingly, denied the petitioner's motion. The court subsequently granted certification to appeal from that judgment, and this appeal followed.[8]

I

Before considering the claims raised by the petitioner in this appeal, we first address a threshold question of whether this court has subject matter jurisdiction over the appeal. "A claim that a court lacks subject matter jurisdiction . . . may be raised at any time during the proceedings, including for the first time on appeal." (Internal quotation marks omitted.) *Mangiafico* v. *Farmington*, 331 Conn. 404, 430, 204 A.3d 1138 (2019). "Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . ." (Internal quotation marks omitted.) *Peters* v. *Dept. of Social Services*, 273 Conn. 434, 441, 870 A.2d 448 (2005). Whether a court possesses subject matter jurisdiction is a question of law over which our review is plenary. See *Wolfork* v. *Yale Medical Group*, 335 Conn. 448, 470, 239 A.3d 272 (2020). In addition, "[i]t is well established that, in determining whether a court has subject matter jurisdiction, every

presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *Novak* v. *Levin*, 287 Conn. 71, 79, 951 A.2d 514 (2008).

At issue is whether the petitioner's appeal is moot. "Mootness implicates [the] court's subject matter jurisdiction and is thus a threshold matter for us to resolve. . . . It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 502, 506, 970 A.2d 578 (2009).

The petitioner commenced the present appeal in the summer of 2020. It is undisputed that, on February 13, 2021, the department offered to provide the petitioner with two doses of a COVID-19 vaccine approved by the United States Food and Drug Administration pursuant to the federal emergency use authorization act. See 21 U.S.C. § 360bbb-3 (2018); *Dixon* v. *De Blasio*, F. Supp. 3d , United States District Court, Docket No. 21-cv-5090 (BMC) (E.D.N.Y. October 12, 2021) (noting that, "[i]n mid-December 2020, the [Food and Drug Administration] issued an emergency use authorization for two COVID-19 vaccines developed by Pfizer and Moderna"), appeal filed (2d Cir. October 22, 2021) (No. 21-2666). The petitioner declined that offer and noted "without prejudice" on the signature line of the consent form furnished to him by the department.

In light of that development, the respondent submits that this court can grant no practical relief to the petitioner, stating: "As the vaccine would offer [the petitioner] the protection from the virus he demands, his refusal to accept that protection should render this appeal moot." By contrast, the petitioner argues that an actual controversy continues to exist regarding the adequacy of the measures taken by the respondent to prevent transmission of the COVID-19 virus. The petitioner argues that, because he is "susceptible to contracting" COVID-19 "[r]egardless of whether or not [he] is vaccinated," this court can provide him practical relief by ordering his immediate release "if it finds that the [department] was acting with deliberate indifference . . . ." We agree with the petitioner that this appeal is not moot because, if we were to agree with his deliberate indifference claim, there is practical relief we could afford him.

The gravamen of the petitioner's appeal concerns the transmission of the COVID-19 virus and the adequacy of the preventative measures instituted by the respondent. In his principal appellate brief, the petitioner, citing *Helling* v. *McKinney*, 509 U.S. 25, 33, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993), submits that the respondent has a duty to protect him "from the *risk of contracting* a 'serious, communicable disease' . . . ." (Emphasis added.) Because COVID-19 indisputably is a serious, communicable disease, the petitioner claims that "[t]he risk of contracting [COVID-19] constitutes an unsafe, life-threatening condition that imperils prisoners' reasonable safety . . . ." (Internal quotation marks omitted.) The petitioner further argues that the measures implemented by the respondent to prevent transmission of that virus were inadequate and evince deliberate indifference to his health and safety.

In our view, the fact that the department offered the petitioner a COVID-19 vaccine in early 2021 certainly bears on the question of whether it acted with deliberate indifference to his health and safety, the substantive issue to be decided in this appeal. Once available, vaccination was yet another measure that the respondent implemented to combat COVID-19 in the correctional facilities of this state.

While the implementation of a vaccination program relates to the merits of a deliberate indifference claim, it does not foreclose meaningful review of such a claim. The present matter concerns the adequacy of the measures taken by the respondent to prevent transmission of the COVID-19 virus. It is undisputed that the petitioner could contract that virus even if he had accepted the vaccination offer. In his appellate brief, the respondent relies in part on the guidance issued by the CDC. That guidance indicates that "vaccines are not 100 [percent] effective at preventing infection [and] some people who are fully vaccinated will still get COVID-19." See Centers for Disease Control and Prevention, Possibility of COVID-19 after Vaccination: Breakthrough Infections (last updated December 17, 2021), available at https://www.cdc.gov/coronavirus/ 2019-ncov/vaccines/effectiveness/why-measure-effectiveness/ breakthrough-cases.html (last visited March 31, 2022). The CDC further advises that "[v]accine breakthrough infections are expected" and that, "as the number of people who are fully vaccinated goes up, the number of vaccine breakthrough infections will also increase." Id.

As the Centers for Medicare and Medicaid Services at the United States Department of Health and Human Services noted in its November 5, 2021 interim final rule with comment period, Omnibus COVID-19 Health Care Staff Vaccination, 86 Fed. Reg. 61,555, 61,615, "the effectiveness of the vaccine[s] to prevent disease transmission by those vaccinated [is] not currently known." Moreover, in considering an eighth amendment deliber-

ate indifference claim, the United States District Court for the Northern District of California emphasized that prison officials "fail to consider that it is not only the unvaccinated population that is at substantial risk of serious harm from COVID-19, and that such risk would be present even if the entire incarcerated population were vaccinated." *Plata* v. *Newsom*,     F. Supp. 3d    , United States District Court, Docket No. 01-CV-01351 (JST) (N.D. Cal. September 27, 2021), appeal filed (9th Cir. October 14, 2021) (No. 21-16696); see also *Commonwealth* v. *McDermott*, 488 Mass. 169, 173, 171 N.E.3d 1136 (2021) ("[a]lthough vaccinations have proved to be highly effective at protecting vaccinated people against symptomatic and severe COVID-19, breakthrough infections can occur and have occurred").

That authority supports the petitioner's contention that an actual controversy continues to exist regarding the adequacy of the measures taken by the respondent to prevent transmission of the COVID-19 virus in this state's correctional facilities, even after vaccination was offered to inmates. If this court were to conclude that the respondent's conduct constituted deliberate indifference to the petitioner's health and safety, we could provide the petitioner with practical relief. Given "the sweeping, constantly evolving nature of the COVID-19 pandemic"; *People* v. *Hernandez*, 488 P.3d 1055, 1060 (Colo. 2021); and mindful of our obligation to indulge every presumption in favor of jurisdiction; *Novak* v. *Levin*, supra, 287 Conn. 79; we therefore conclude that the petitioner's appeal is not moot.

## II

On appeal, the petitioner claims that the court improperly concluded that he had not proven the deliberate indifference necessary to establish an eighth amendment violation. We disagree.

As a preliminary matter, we note that "[t]he habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review." (Internal quotation marks omitted.) *Faraday* v. *Commissioner of Correction*, 288 Conn. 326, 338, 952 A.2d 764 (2008); see also *Wilson* v. *Williams*, 961 F.3d 829, 840 (6th Cir. 2020) (issue of "whether [a prison official's] conduct could constitute deliberate indifference is a mixed question of law and fact").

The eighth amendment proscribes the infliction of cruel and unusual punishments; see U.S. Const., amend. VIII; which "encompasses more than barbarous physical punishment." *Arey* v. *Warden*, 187 Conn. 324, 328, 445 A.2d 916 (1982). As the United States Supreme Court

has explained, the eighth amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates . . . ." (Citation omitted; internal quotation marks omitted.) *Farmer* v. *Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). At the same time, the court emphasized that "[t]he [c]onstitution does not mandate comfortable prisons . . . . [N]ot . . . every injury suffered by [a] prisoner . . . translates into constitutional liability for prison officials responsible for the victim's safety. . . . [A] prison official violates the [e]ighth [a]mendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious . . . . [Second] a prison official must have a sufficiently culpable state of mind. . . . In prison-conditions cases that state of mind is one of deliberate indifference to inmate health or safety . . . ." (Citations omitted; footnotes omitted; internal quotation marks omitted.) Id., 832–34.

"An official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . Thus, an official's failure to alleviate a significant risk that he should have perceived but did not [does not violate the eighth amendment]. . . . Accordingly, to establish a claim of deliberate indifference in violation of the eighth amendment, *a prisoner must prove* that the officials' actions constituted more than ordinary lack of due care for the prisoner's interests or safety. . . . [D]eliberate indifference is a stringent standard of fault . . . requiring proof of a state of mind that is the equivalent of criminal recklessness. . . . In other words, negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." (Citations omitted; emphasis added; footnote omitted; internal quotation marks omitted.) *Faraday* v. *Commissioner of Correction*, supra, 288 Conn. 338–40. To succeed on a deliberate indifference claim, a litigant must establish that a prison official recklessly disregarded a substantial risk of harm to a prisoner. See *Farmer* v. *Brennan*, supra, 511 U.S. 836–37; *Valentine* v. *Collier*, 993 F.3d 270, 281–82 (5th Cir. 2021).

In the present case, the petitioner claims that the respondent acted with deliberate indifference by disregarding risks to his health and safety following the outbreak of the COVID-19 pandemic. For his part, the respondent does not dispute that the COVID-19 virus presented a substantial risk of harm to the petitioner.[9] The respondent nevertheless submits that the petitioner failed to demonstrate that the respondent recklessly

disregarded that risk during the early months of the pandemic. We agree with the respondent.

As the United States Court of Appeals for the Third Circuit has observed, "[t]he context of the [respondent's] conduct is essential to determine whether it shows the requisite deliberate indifference . . . . COVID-19 presents highly unusual and unique circumstances . . . that have radically transformed our everyday lives in ways previously inconceivable . . . and have altered [our world] with lightning speed . . . . So we must evaluate the [respondent's] response to the virus in that context." (Citations omitted; internal quotation marks omitted.) *Hope* v. *Warden*, 972 F.3d 310, 330 (3d Cir. 2020); accord *Swain* v. *Junior*, 961 F.3d 1276, 1280 (11th Cir. 2020) ("[t]he [COVID-19] virus . . . poses particularly acute challenges for the administration of the country's jails and prisons"). COVID-19 is a "rapidly evolving" pandemic. *Casey* v. *Lamont*, 338 Conn. 479, 484, 258 A.3d 647 (2021); see also *United States* v. *Kauwe*, 467 F. Supp. 3d 940, 947 (D. Nev. 2020) (noting "the scientific and medical community's rapidly-evolving understanding of COVID-19"), appeal dismissed, United States Court of Appeals, Docket No. 20-10230 (9th Cir. October 20, 2020). Although two years have passed since the initial COVID-19 outbreak in the United States, the question presented in this appeal concerns the respondent's conduct in the months immediately prior to the court's May 19, 2020 denial of the petitioner's motion for release.. See, e.g., *Fraihat* v. *United States Immigration & Customs Enforcement*, 16 F.4th 613, 620 (9th Cir. 2021) (review of deliberate indifference claim regarding defendant's response to COVID-19 pandemic confined to period between outbreak and rendering of judgment by trial court).

In its memorandum of decision, the court, as sole arbiter of witness credibility; see *Lebron* v. *Commissioner of Correction*, 204 Conn. App. 44, 51, 250 A.3d 44, cert. denied, 336 Conn. 948, 250 A.3d 695 (2021); credited Freston's testimony regarding "the evaluation, diagnosis and treatment" of the petitioner's medical issues. At the hearing, the court asked Freston if any of the petitioner's ailments increased the risk of contracting COVID-19. Freston testified that "two chronic diseases that may contribute increase risks for contracting COVID [or] mortality from COVID infection include the [petitioner's] pulmonary sarcoidosis and [his] asthma." Freston explained that "the status of the [pulmonary] sarcoidosis is stable. He's not on any medication for it." In addition, Freston testified that the petitioner was provided an inhaled steroid treatment for his asthma, which was classified as "moderate persistent . . . ." Freston noted that, "on [a] recent pulmonary function test, [the petitioner] had reversibility of the asthma, and the general overall function of the lung capacity was described as improved . . . ." Freston also testified that the petitioner was being "followed

by a specialist" for both of those conditions. The petitioner's medical records confirm that the department provided ongoing treatment to him for those conditions.

The court also credited Freston's testimony regarding the department's "measures designed to safeguard the petitioner's health" and its "protective and mitigating measures . . . to prevent and reduce the spread of this virus through the petitioner's facility." Freston testified that the department had "extensive programs and policies in place that are changed frequently throughout each week as we gain more information and knowledge of this disease." Freston explained that the department's measures included protocols "to monitor, screen and identify people that show symptoms and isolate them appropriately according to CDC recommendations" and emphasized that the department was "adhering to the CDC recognized interventions for correctional facilities. . . . [P]eople are being screened, they're being asked [about their health], they're being looked at. If somebody says that they [have] symptoms, they're quickly evaluated, they have a mask to put on so it doesn't transmit to other people. If they have a fever, if they have other known symptom[s] . . . they are tested for COVID. Then they are isolated and quarantined until results are known. Those people are not mixed with the other population." Freston also noted that "anybody that tested positive for COVID would move to Northern Correctional Institution where we set up the COVID infirmary [with a] higher level of care" and "use [of] a special medicine [that] wasn't available . . . in the other [correctional] facilities." In addition, Freston confirmed that "the governor and the health department have been jointly working with [the department] as well as the National Guard" to implement mass COVID-19 testing at correctional facilities throughout the state.

The court also had before it the declarations of Barone and Kennedy, which were made under penalty of perjury pursuant to 28 U.S.C. § 1746. In their declarations, Barone and Kennedy outlined the screening, testing, and isolation protocols that had been implemented to combat the spread of the COVID-19 virus. They also detailed additional measures taken by the department, including "steps to increase social distancing and reduce the number of people with whom each inmate has contact"; providing personal protective equipment and masks to all inmates and staff; providing cleaning supplies and soap for hand-washing; conducting more frequent cleaning of "[a]ll areas" of the correctional facilities; educating inmates and staff on the virus and "social distancing and cleaning procedures"; suspending social visits, gym recreation, religious services, and volunteer services at the facilities; "quarantining all new admits from the general population for fourteen days"; requiring inmates to eat all meals inside their cells; and requiring inmates to wear "protective masks

when . . . exiting cells, exiting cubicles, and in a common area."[10]

As the United States Supreme Court has explained, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. A prison official's duty under the [e]ighth [a]mendment is to ensure reasonable safety . . . . Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the [c]ruel and [u]nusual [p]unishments [c]lause." (Citations omitted; internal quotation marks omitted.) *Farmer* v. *Brennan*, supra, 511 U.S. 844–45.

In light of the measures the department instituted in response to the COVID-19 outbreak during the spring of 2020, we cannot conclude that the respondent's conduct was an unreasonable reaction to the risk posed to the petitioner that amounted to the recklessness required under established law. See id., 836–37. The record substantiates the court's determination that the respondent "has provided adequate medical care, has taken appropriate measures to minimize the petitioner's exposure and risk to COVID-19 and has not been deliberately indifferent to any of the risks to the petitioner's health."

Several federal courts of appeals have reached a similar result when faced with deliberate indifference claims involving COVID-19. *Swain* v. *Junior*, supra, 961 F.3d 1280, involved "a group of medically vulnerable inmates" who, like the petitioner here, raised an eighth amendment challenge to the response of prison officials in the early months of the pandemic. In its decision, which was issued one day prior to the habeas court's June 16, 2020 memorandum of decision in the present case, the United States Court of Appeals for the Eleventh Circuit found that, "[b]y taking other measures, besides release—including, among many other things, implementing some social-distancing measures, distributing face masks, screening inmates and staff, and providing cleaning and personal hygiene supplies—[the director of corrections] has responded reasonably to the risk of the virus." Id., 1291. The court further stated: "We simply cannot conclude that, when faced with a perfect storm of a contagious virus and the space constraints inherent in a correctional facility, the defendants here acted unreasonably by doing their best. Because the defendants act[ed] reasonably, they cannot be found liable under the [e]ighth [a]mendment." (Internal quotation marks omitted.) Id., 1289. That logic also applies here.

Like the present case, *Wilson* v. *Williams*, supra, 961 F.3d 832–33, involved an action by inmate petitioners who sought "to obtain release from custody to limit their exposure to the COVID-19 virus" in the early months of the COVID outbreak.[11] In rejecting their

eighth amendment claim, the United States Court of Appeals for the Sixth Circuit first noted that "[t]here is no question that the [respondent Bureau of Prisons] was aware of and understood the potential risk of serious harm to inmates . . . through exposure to the COVID-19 virus. . . . The [respondent] acknowledged the risk from COVID-19 and implemented a six-phase plan to mitigate the risk of COVID-19 spreading . . . ." (Citation omitted.) Id., 840. With respect to deliberate indifference, the court emphasized that "[t]he key inquiry is whether the [respondent] responded reasonably to th[is] risk." (Internal quotation marks omitted.) Id. The court then stated that the respondent "took preventative measures, including screening for symptoms, educating staff and inmates about COVID-19, cancelling visitation, quarantining new inmates, implementing regular cleaning, providing disinfectant supplies, and providing masks.[12] The [respondent] initially struggled to scale up its testing capacity . . . but . . . represented that it was on the cusp of expanding testing. The [respondent's] efforts to expand testing demonstrate the opposite of a disregard of a serious health risk. This court has found similar responses by prison officials and medical personnel to be reasonable responses to serious risks of harm." (Footnote added.) Id., 841. Because that response was a reasonable one, the court held that petitioners could not prevail on their deliberate indifference claim.[13] See id.; see also *Valentine* v. *Collier*, supra, 993 F.3d 283 (rejecting eighth amendment deliberate indifference claim by inmate plaintiffs because defendant's response to COVID-19 pandemic was "not unreasonable"); *Hope* v. *Warden*, supra, 972 F.3d 329 (same, and noting that "mere disagreement as to the response to the risk to [p]etitioners in light of their medical condition will not support constitutional infringement" (internal quotation marks omitted)); cf. *Fraihat* v. *United States Immigration & Customs Enforcement*, supra, 16 F.4th 647 (concluding that immigration detainee plaintiffs "have not established a likelihood of success or serious questions on the merits of their claim that [United States Immigration and Customs Enforcement's] nationwide approach to COVID-19 in spring 2020 reflected deliberate indifference or reckless disregard of health risks").

In the present case, the facts found by the court—and particularly its determination that the respondent's response to the COVID-19 outbreak in the early months of the pandemic was reasonable and not reckless—find support in the record before us.[14] The precedent of the United States Supreme Court instructs that, with respect to claims of deliberate indifference, "prison officials who act reasonably [in response to a substantial risk to inmate health or safety] cannot be found liable under the [c]ruel and [u]nusual [p]unishments [c]lause." *Farmer* v. *Brennan*, supra, 511 U.S. 845. The habeas court, therefore, properly concluded as a matter of law

that the petitioner had not met his burden of demonstrating the deliberate indifference necessary to establish an eighth amendment violation.

### III

The petitioner also claims that the respondent's response to the COVID-19 outbreak in the early months of the pandemic violated his rights under article first, §§ 8 and 9, of the Connecticut constitution.[15] More specifically, he contends that, under the "contemporary standards of decency" framework set forth in *State* v. *Santiago*, 318 Conn. 1, 21, 122 A.3d 1 (2015), this court should conclude that his continued confinement constitutes cruel and unusual punishment under our state constitution. The respondent counters that this state constitutional claim is unpreserved, as it was neither presented to nor decided by the habeas court, and is not entitled to *Golding* review. See *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). We agree with the respondent.

### A

"Habeas corpus is a civil proceeding." *Collins* v. *York*, 159 Conn. 150, 153, 267 A.2d 668 (1970); see also *Blumenthal* v. *Barnes*, 261 Conn. 434, 449, 804 A.2d 152 (2002); *Lorthe* v. *Commissioner of Correction*, 103 Conn. App. 662, 687 n.21, 931 A.2d 348, cert. denied, 284 Conn. 939, 937 A.2d 696 (2007). Our rules of practice require a party, as a prerequisite to appellate review, to distinctly raise its claim before the trial court. See Practice Book § 5-2 ("[a]ny party intending to raise any question of law which may be the subject of an appeal must . . . state the question distinctly to the judicial authority"); Practice Book § 60-5 ("[t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial"). When a party fails to do so, the judicial authority is "under no obligation to decide the question." Practice Book § 5-2. Accordingly, Connecticut's appellate courts "will not review a claim unless it was distinctly raised at trial." (Internal quotation marks omitted.) *Eubanks* v. *Commissioner of Correction*, 329 Conn. 584, 597, 188 A.3d 702 (2018); see also *Mitchell* v. *Commissioner of Correction*, 156 Conn. App. 402, 408, 114 A.3d 168 ("this court is not bound to consider any claimed error unless it appears on the record that the question was distinctly raised at trial and was ruled upon and decided by the court adversely to the appellant's claim" (internal quotation marks omitted)), cert. denied, 317 Conn. 904, 114 A.3d 1220 (2015); *State* v. *Faison*, 112 Conn. App. 373, 379, 962 A.2d 860 ("[i]t is fundamental that claims of error must be distinctly raised and decided in the trial court"), cert. denied, 291 Conn. 903, 967 A.2d 507 (2009).

As our Supreme Court has explained, "principles of fairness dictate that both the opposing party and the

trial court are entitled to have proper notice of a claim. . . . Our review of a claim not distinctly raised at the trial court violates that right to notice. . . . [A]ppellate review of newly articulated claim[s] not raised before the habeas court would amount to an ambuscade of the [habeas] judge . . . . Accordingly, the determination of whether a claim has been properly preserved will depend on a careful review of the record to ascertain whether the claim on appeal was articulated below with sufficient clarity to place the trial court [and the opposing party] on reasonable notice of that very same claim." (Citations omitted; internal quotation marks omitted.) *Eubanks* v. *Commissioner of Correction*, supra, 329 Conn. 597–98; see also *Swerdloff* v. *AEG Design/Build, Inc.*, 209 Conn. 185, 188, 550 A.2d 306 (1988) ("[a] claim 'briefly suggested' is not 'distinctly raised' ").

The petitioner did not indicate, in his motion for immediate release or at the May 29, 2020 hearing, that he was pursuing a claim under the Connecticut constitution. He also presented no evidence or argument that contemporary standards of decency compel the conclusion that the respondent had violated his state constitutional rights. See *Eubanks* v. *Commissioner of Correction*, supra, 329 Conn. 587 (concluding that Appellate Court "improperly reached the merits of the petitioner's claim" when "the petitioner presented no evidence and made no argument to the habeas court that would have alerted either that court or opposing counsel" of that claim). For that reason, it is not surprising that there is no discussion of our state constitution in the court's memorandum of decision.

In *Eubanks*, the Supreme Court emphasized that "the habeas court's . . . decision makes clear that . . . the court had not been placed on notice that the petitioner was making that argument. . . . [N]othing in the court's decision suggests that it understood the petitioner to be making [the] argument" that he advanced on appeal. Id., 600–601. That also is the case here. Because the petitioner alleged in his motion for immediate release that his continued incarceration threatened his health and safety,[16] the court stated in its memorandum of decision that it "will address [that motion] as a petition for a writ of habeas corpus based on unsafe conditions of custody" in violation of the petitioner's well established eighth amendment rights, as recognized by the United States Supreme Court in *Farmer* v. *Brennan*, supra, 511 U.S. 832. The court then proceeded to analyze his claim under the federal constitution and concluded that the petitioner had not met his burden of establishing an eighth amendment violation.

Furthermore, to the extent that the petitioner believed he had, in fact, properly raised a state constitutional claim that the habeas court failed to address, the petitioner did not seek an articulation of the court's

decision with respect to any state constitutional claim. See *Eubanks* v. *Commissioner of Correction*, supra, 329 Conn. 594–95 (petitioner filed motion for articulation with habeas court); *Manifold* v. *Ragaglia*, 94 Conn. App. 103, 124, 891 A.2d 106 (2006) (articulation is proper vehicle to address matter overlooked in decision). In short, the petitioner did nothing to alert the habeas court or the opposing party that he was pursuing a claim under the Connecticut constitution. We, therefore, conclude that the petitioner failed to preserve his state constitutional claim for appellate review.

### B

The petitioner alternatively claims that he is entitled to review of that unpreserved claim pursuant to *Golding*.[17] The precedent of our Supreme Court compels a different conclusion.

Three decades ago, the Supreme Court suggested that the extraordinary review afforded under *State* v. *Evans*, 165 Conn. 61, 327 A.2d 576 (1973), the precursor to *Golding*, did not apply to habeas appeals. See *Safford* v. *Warden*, 223 Conn. 180, 190 n.12, 612 A.2d 1161 (1992). In light of that guidance, this court subsequently held that "*Golding* review is not available for unpreserved claims of [constitutional] error raised for the first time in a habeas appeal." *Hunnicutt* v. *Commissioner of Correction*, 83 Conn. App. 199, 202, 848 A.2d 1229, cert. denied, 270 Conn. 914, 853 A.2d 527 (2004); see also *Cupe* v. *Commissioner of Correction*, 68 Conn. App. 262, 271 n.12, 791 A.2d 614 ("*Golding* does not grant . . . authority for collateral review and is . . . inapplicable to habeas proceedings"), cert. denied, 260 Conn. 908, 795 A.2d 544 (2002).

In *Mozell* v. *Commissioner of Correction*, 291 Conn. 62, 67, 967 A.2d 41 (2009), the petitioner sought review of an unpreserved claim that the habeas court had violated his state and federal due process rights by declaring a mistrial. Because that claim was inadequately briefed, the Supreme Court declined to reach its merits. See id., 69. At the same time, the court clarified in a footnote that *Golding* review is not categorically unavailable in habeas appeals but, rather, is "applicable" when "the petitioner challenges the actions of the habeas court itself . . . ." Id., 67 n.2.

The Supreme Court expounded on that precept six years later. In *Moye* v. *Commissioner of Correction*, 316 Conn. 779, 780, 114 A.3d 925 (2015), the court framed the issue before it as "the extent to which unpreserved constitutional claims may be reviewed on appeal in habeas actions." On appeal, the petitioner had argued that "*Golding* review is available in a habeas appeal for *any* claim that would have been cognizable in the habeas court." (Emphasis added.) Id., 783. In rejecting that contention, the court first discussed *Mozell*, in which it previously had recognized that *Golding* review

could be applied to habeas appeals in limited circumstances. See id., 786–87. The court then explained that "*Golding* review [was] not available for the petitioner's unpreserved . . . claim because that claim does not arise out of the actions or omissions of the habeas court itself. . . . *Golding* review is available in a habeas appeal only for claims that challenge the actions of the habeas court." Id., 787.

The court further held that resort to *Golding* is unavailing when a petitioner has neither distinctly alleged the constitutional claim in the petition for a writ of habeas corpus nor pursued such a claim at the habeas trial. As the court stated: "The petitioner asks this court to sanction *Golding* review under different circumstances. Specifically, the petitioner seeks *Golding* review of a claim that he raised for the first time in his habeas appeal but *could have raised in his habeas petition.* If we were to allow *Golding* review under such circumstances, a habeas petitioner would be free to raise virtually any constitutional claim on appeal, regardless of what claims he raised in his habeas petition or what occurred at his habeas trial." (Emphasis in original.) Id., 789; see also *Eubanks* v. *Commissioner of Correction,* supra, 329 Conn. 604 n.8 (*Golding* review of unpreserved constitutional claim foreclosed in light of *Moye*).

As we already have noted, the petitioner did not distinctly raise a state constitutional claim before the habeas court. There was no mention of the Connecticut constitution in his motion for immediate release or the May 29, 2020 hearing. The petitioner nonetheless contends that, because he alleged that his motion for immediate release was "made in accordance with his constitutional rights," the court should have (1) construed his motion to include a claim that the Connecticut constitution provides greater protection than the federal constitution with respect to the confinement of inmates during a global pandemic in light of contemporary standards of decency and (2) decided the merits of that novel constitutional claim.[18] We disagree. Under our rules of practice and established precedent, the judicial authority is under no obligation to decide any question of law that has not been distinctly stated to the judicial authority. See Practice Book § 5-2; *Eubanks* v. *Commissioner of Correction,* supra, 329 Conn. 587, 600 (Appellate Court improperly reached merits of unpreserved claim that was not addressed by habeas court because petitioner "presented no evidence and made no argument to the habeas court that would have alerted either that court or opposing counsel" of distinct question of law and habeas court's "decision makes clear that . . . the court had not been placed on notice that the petitioner was making that argument"); *Swerdloff* v. *AEG Design/Build, Inc.,* supra, 209 Conn. 188 (claim briefly suggested was not distinctly raised); *Harris* v. *Commissioner of Correction,* 205 Conn. App. 837, 855 n.14, 257

A.3d 343 (court not obligated to decide question of law that petitioner failed to distinctly raise), cert. denied, 339 Conn. 905, 260 A.3d 484 (2021); *Solek* v. *Commissioner of Correction*, 107 Conn. App. 473, 480, 946 A.2d 239 (it is not responsibility of habeas judge, without some specific request from petitioner, to search record in order to find some basis for relief for petitioner), cert. denied, 289 Conn. 902, 957 A.2d 873 (2008); *Alexander* v. *Commissioner of Correction*, 103 Conn. App. 629, 639–40 n.4, 930 A.2d 58 (because petitioner failed to raise issue before habeas court, judicial authority was under no obligation to decide question), cert. denied, 284 Conn. 939, 937 A.2d 695 (2007).

In rejecting the petitioner's claim that *Golding* review is "available in a habeas appeal for any claim that would have been cognizable in the habeas court"; *Moye* v. *Commissioner of Correction*, supra, 316 Conn. 783; the Supreme Court expressly disavowed the approach proposed by the petitioner here. As it stated: "[T]he petitioner seeks *Golding* review of a claim that he raised for the first time in his habeas appeal but *could have raised in his habeas petition.* If we were to allow *Golding* review under such circumstances, a habeas petitioner would be free to raise virtually any constitutional claim on appeal, regardless of what claims he raised in his habeas petition or what occurred at his habeas trial. Such a rule would . . . undermine the principle that a habeas petitioner is limited to the allegations in his petition, which are intended to put the [respondent] on notice of the claims made, to limit the issues to be decided, and to prevent surprise." (Emphasis in original; internal quotation marks omitted.) Id., 789.

Bound by that precedent, we conclude that *Golding* review is unwarranted in the present case. Our Supreme Court "repeatedly has underscored that *Golding* is a *narrow exception* to the general rule that an appellate court will not entertain a claim that has not been raised in the trial court." (Emphasis in original; internal quotation marks omitted.) *In re Azareon Y.*, 309 Conn. 626, 635, 72 A.3d 1074 (2013); see also *State* v. *Elson*, 311 Conn. 726, 764, 91 A.3d 862 (2014) (describing *Golding* as doctrine "of extraordinary review"). In *Moye*, our Supreme Court carefully circumscribed the limited "extent to which unpreserved constitutional claims may be reviewed on appeal in habeas actions." *Moye* v. *Commissioner of Correction*, supra, 316 Conn. 780. The court rejected the petitioner's claim that "*Golding* review is more widely available in habeas appeals than just for claims that challenge the actions of the habeas court itself"; id., 788; and declined to permit a petitioner "to raise virtually any constitutional claim on appeal, regardless of what claims he raised in his habeas petition or what occurred at his habeas trial." Id., 789. The Supreme Court made clear that, in the habeas context, *Golding* review is unavailable for claims that "could

have [been] raised in [the] habeas petition." (Emphasis omitted.) Id. It further instructed that "*Golding* review is available in a habeas appeal only for claims that challenge the actions of the habeas court." Id., 787; see also id., 788 (*Golding* review is "plainly limited . . . to claims regarding the actions of the habeas court itself . . . a far narrower category of claims than all claims that would have been cognizable in the habeas court" (citation omitted; internal quotation marks omitted)).[19] Applying those precepts to the facts of that case, the court emphasized that "the habeas court did not, and *could not*, take any action with respect to that claim because the petitioner never presented it to the habeas court. The habeas court is not responsible for the petitioner's own failure to present his [constitutional claim]." (Emphasis in original.) Id.

In this case, the petitioner could have raised a state constitutional claim in his motion for immediate release, but did not. The petitioner also could have invoked the protections of our state constitution at the May 29, 2020 hearing, but did not. As a result, the habeas court was under no obligation to act on such a claim. See Practice Book § 5-2. Moreover, because the habeas court never was presented with a state constitutional claim, it necessarily could not take any action with respect thereto.[20] The precedent of our Supreme Court instructs that *Golding* review is unavailable in such circumstances.[21]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Although the petitioner pursued his motion for immediate release in a self-represented capacity before the habeas court, he is represented by counsel in this appeal.

[2] The record contains the declaration of Warden Antonio Santiago, in which he averred that the petitioner's "current release date is May 4, 2024 and [his] parole eligibility date is April 22, 2023 . . . ."

[3] A copy of the petitioner's medical records was admitted into evidence at a hearing on the petitioner's motion that took place on May 29, 2020.

[4] Those declarations were made under penalty of perjury pursuant to 28 U.S.C. § 1746.

[5] Due to the COVID-19 pandemic, the Judicial Branch began holding remote hearings using the Microsoft Teams platform. For more information, see State of Connecticut, Judicial Branch, Connecticut Guide to Remote Hearings for Attorneys and Self-Represented Parties (November 23, 2021), p. 5, available at https://jud.ct.gov/HomePDFs/ConnecticutGuideRemoteHearings.pdf (last visited March 31, 2022) ("Microsoft Teams is a collaborative meeting app with video, audio, and screen sharing features").

[6] During the hearing, the petitioner challenged the substance of those sworn declarations. In particular, the petitioner disputed averments regarding his disciplinary history while incarcerated, the medical care provided by the department, and the sanitary measures implemented by the department.

[7] During his testimony, the petitioner amended his prayer for relief to include, as an alternative to his immediate release, a request "to be placed on single cell status" while incarcerated.

[8] Although the present appeal could be viewed as interlocutory in nature, as the petitioner's habeas corpus action remains pending, the habeas court treated the emergency motion for immediate release as an independent habeas petition and, thus, as conceded by the respondent, the court's ruling on the motion effectively terminated a separate and distinct proceeding. Accordingly, the court's ruling on the petitioner's motion constitutes an appealable final judgment. See, e.g., *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983).

[9] See, e.g., *Swain* v. *Junior*, 961 F.3d 1276, 1280 (11th Cir. 2020) ("[b]ecause incarcerated inmates are necessarily confined in close quarters, a contagious virus represents a grave health risk to them—and graver still to those who have underlying conditions that render them medically vulnerable"); *Wilson* v. *Williams*, supra, 961 F.3d 833 ("The COVID-19 virus is highly infectious and can be transmitted easily from person to person. . . . If contracted, COVID-19 can cause severe complications or death.").

[10] In his appellate reply brief, the petitioner claims that our consideration of those declarations is improper, as they were not formally admitted as full exhibits at the remote hearing conducted on the Microsoft Teams platform; see footnote 5 of this opinion; and, thus, are not part of the record for our review. On the particular facts of this case, we do not agree. This case involves an emergency motion for immediate release, in which the petitioner alleged that his life was at risk due to the department's initial response to the COVID-19 outbreak. In light of the gravity of the petitioner's claim, that motion was treated with the utmost urgency and, despite the myriad challenges presented in the early days of the pandemic, the respondent filed his objection, an expedited remote hearing was held, and the court issued its decision two weeks from the filing of the petitioner's motion.

In accordance with Practice Book § 23-68 (d) ("prior to any proceeding in which a person appears by means of an interactive audiovisual device, copies of all documents which may be offered at the proceeding shall be provided to all counsel and self-represented parties in advance of the proceeding"), the respondent provided copies of the sworn declarations to the petitioner prior to the remote hearing. Moreover, at the outset of that hearing, the petitioner confirmed that he had received copies of those documents. The petitioner then proceeded to dispute the substance of those declarations during his testimony. See footnote 6 of this opinion. When the petitioner first expressed his disagreement with the substance of one of those declarations early in the hearing, the court asked the respondent if that declaration "was part of your recent filing," and counsel replied, "[y]es, it is, Your Honor. Just that—to make the—to verify for the court, it should be exhibit A . . . ." In so doing, the respondent indicated that those declarations were evidence for the court to consider. The petitioner did not object to consideration of them by the court.

The court likewise referenced those declarations during the hearing. For example, during Freston's testimony, the court stated: "I know we have the . . . affidavit of [Barone, but] what, if you know, is being done to separate . . . positive from negative inmates?" The respondent's counsel similarly noted, without any objection from the petitioner, that the petitioner had not established deliberate indifference in light of Freston's testimony and "the declaration from [Barone] as to exactly the measures that . . . have been taken and are being taken in regards to COVID-19."

In its memorandum of decision, the court expressly stated that its decision was predicated on its "review of the testimony and exhibits . . . ." Its use of the plural "exhibits" indicates that the court considered the sworn declarations to be materials that properly were before the court, as the only other exhibit introduced at the hearing was the petitioner's medical file. Those sworn declarations were part of the pleadings in this emergency motion for immediate release, were provided to the petitioner prior to the remote hearing, were the subject of discussion by all parties during that hearing, and were represented to be exhibits by the respondent's counsel. In light of the foregoing, we conclude that the sworn statements properly are before us as a part of the habeas court record.

[11] *Wilson* v. *Williams*, supra, 961 F.3d 829, was decided one week prior to the habeas court's issuance of its memorandum of decision in the present case.

[12] The respondent in the present case implemented similar measures as part of its response to the COVID-19 outbreak in Connecticut.

[13] Several state courts have reached the same conclusion. See, e.g., *Matter of Writ of Habeas Corpus*, 168 Idaho 411, 422–25, 483 P.3d 954 (2020) (rejecting eighth amendment deliberate indifference claim predicated on response of prison officials to COVID-19 outbreak); *Committee for Public Counsel Services* v. *Barnstable County Sheriff's Office*, 488 Mass. 460, 474–77, 173 N.E.3d 1102 (2021) (same); *People ex rel. Figueroa* v. *Keyser*, 193 App. Div. 3d 1148, 145 N.Y.S.3d 663 (same), leave to appeal denied, 37 N.Y.3d 905, 173 N.E.3d 428, 151 N.Y.S.3d 380 (2021); *Colvin* v. *Inslee*, 195 Wn. 2d 879, 899–901, 467 P.3d 953 (2020) (same).

[14] Our Supreme Court "consistently [has] held that reasonableness is a question of fact for the trier to determine based on all of the circumstances."

*Williams Ford, Inc.* v. *Hartford Courant Co.*, 232 Conn. 559, 580, 657 A.2d 212 (1995). Recklessness likewise presents a question of fact. See *Williams* v. *Housing Authority*, 327 Conn. 338, 360–61, 174 A.3d 137 (2017); *Frillici* v. *Westport*, 264 Conn. 266, 277, 823 A.2d 1172 (2003).

[15] Article first, § 8, of the Connecticut constitution provides in relevant part: "No person shall be . . . deprived of life, liberty or property without due process of law . . . ."

Article first, § 9, of the Connecticut constitution provides: "No person shall be arrested, detained or punished, except in cases clearly warranted by law."

"It is . . . well established that the constitution of Connecticut prohibits cruel and unusual punishments under the auspices of the dual due process provisions contained in article first, §§ 8 and 9. . . . Although neither provision of the state constitution expressly references cruel or unusual punishments, it is settled constitutional doctrine that both of our due process clauses prohibit governmental infliction of cruel and unusual punishments." (Internal quotation marks omitted.) *State* v. *Rivera*, 177 Conn. App. 242, 253, 172 A.3d 260 (2017), cert. denied, 333 Conn. 937, 218 A.3d 1046 (2019).

[16] In his motion for immediate release, the petitioner alleged in relevant part: "If [the petitioner] is not release[d], and does get infected with COVID-19, [his] chances of surviving the virus is 9 [percent]. Simply put, [the petitioner] will die. . . . There is no practical difference in releasing [the petitioner] now and/or a year or two from now. Further, not only is [the petitioner's] health unnecessarily compromised by continued incarceration, but lowering the inmate population in general keeps other inmates and [department] staff safer."

[17] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original; footnote omitted.) *State* v. *Golding*, supra, 213 Conn. 239–40, as modified by *In re Yasiel R.*, supra, 317 Conn. 781.

[18] In his appellate reply brief, the petitioner characterizes his state constitutional claim as an issue of first impression in Connecticut.

[19] Although the precedent of our Supreme Court limits the applicability of *Golding* review in the habeas context, we note that a reviewing court retains the authority, pursuant to its supervisory powers over the administration of justice; see *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 150, 84 A.3d 840 (2014); to review unpreserved claims in a habeas appeal. See, e.g., *Richardson* v. *Commissioner of Correction*, 298 Conn. 690, 701 n.11, 6 A.3d 52 (2010) (recognizing supervisory authority to review unpreserved claim but declining to exercise that "extraordinary power"); *Saunders* v. *Commissioner of Correction*, 157 Conn. App. 257, 264 n.7, 116 A.3d 338 (2015) (exercising supervisory power to review unpreserved claim).

[20] If the petitioner had invoked the protections of our state constitution in either his motion or at the May 29, 2020 hearing and the court thereafter refused to consider them in its decision, the petitioner would be entitled to appellate review of that inaction by the court. See *Moye* v. *Commissioner of Correction*, supra, 316 Conn. 787–89. Moreover, as a hypothetical example, if the court had violated the petitioner's right to due process during that hearing, the petitioner would be entitled to *Golding* review irrespective of whether he memorialized his concern at the hearing, as such a claim pertains to the *actions* of the habeas court. See *Mozell* v. *Commissioner of Correction*, supra, 291 Conn. 67 n.2 (concluding that *Golding* review is applicable to petitioner's claim that habeas court's action in declaring mistrial violated due process rights).

[21] Even if the petitioner's claim was properly before us, the arguments set forth in his brief suggest that his claim lacks merit. Nothing in the petitioner's appellate briefs and oral argument supports the proposition that the Connecticut constitution provides greater protection from cruel and unusual punishments than its federal counterpart with respect to the confinement of inmates during the COVID-19 pandemic.

---